JOHN J. GULINO  SBN 160189
GulinoLawOffice@aol.com
GULINO LAW OFFICE
2107 North Broadway, Suite 309
Santa Ana, California 92706
714-541-6900
714-242-9042 – fax

Attorneys for Defendants
Grumpy Beverage, LLC, Paul Sandford
and Nick Sandford

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| GRUMPY CAT LIMITED, an Ohio Limited Liability Entity,<br><br>            Plaintiff,<br><br>v.<br><br>GRENADE BEVERAGE LLC a California Limited Liability Company; PAUL SANDFORD, and individual; NICK SANDFORD, an individual; and DOES 1-50.<br><br>            Defendants. | Case No.:    8:15-cv-02063-DOC-DFM<br><br>**ANSWER TO COMPLAINT OF GRUMPY CAT LIMITED**<br><br>DEMAND FOR JURY TRIAL<br><br>Complaint filed:   December 11, 2015<br>Trial Date:        None set |

## I.    **ANSWER TO COMPLAINT**

Defendants, Grumpy Beverage, LLC, Paul Sandford, and Nick Sandford  answer the complaint of the Plaintiff, Grumpy Cat Limited (hereafter "Grumpy Cat") as follows. Prior to the filing of this action and pursuant to Agreement with the Plaintiff, Grumpy Cat, Grenade Beverage, LLC ("Grenade") assigned all right title and interest in the License Agreement identified in the Plaintiff's Complaint at paragraph 20 thereof, although not appended to the Complaint, to Grumpy Beverage, LLC, a Texas Limited Liability Company (hereafter "Grumpy Beverage") and in the capacity of assignee of that License Agreement, Grumpy Beverage appears in this matter and answers the Plaintiff's complaint  in lieu of proceeding with a motion for leave to drop Grenade and add Grumpy Beverage as the proper party defendant and to further the efficient administration of justice.

Particularly, pursuant to the License Agreement, a true and accurate copy of which is appended hereto as Exhibit "1" and incorporated by this reference, and Section 6(d) thereof, Plaintiff, Grumpy Cat agreed that Grenade Beverage would form "Grumpy Beverage LLC "to act as the exclusive rightsholder of all rights in and to the Licensed Properties granted herein as an exclusive sub-licensee of Licensee of such rights, and the exclusive operating entity in connection with the sales and exploitations of the Products anticipated hereunder, and in which Licensor shall own an immediately-vested, non-dilutable ten percent (10%) Membership Interest (including all voting and financial participation rights), with the remaining 90% Membership Interest or Financial Interest (as the case may be) to be distributed amongst Licensee and various other investor members to be determined by Licensee . . . Licensor's equity interest in [Grumpy Beverage LLC] shall be in addition to any other compensation and royalties payable to it hereunder." As mandated by the License Agreement and Plaintiff, Grumpy Cat, Grumpy Beverage was formed, the License Agreement assigned to Grumpy Beverage, in which entity Plaintiff, Grumpy Cat, was granted a ten percent Membership Interest. Appended hereto as Exhibit "2" and incorporated by this reference is a true and accurate copy of the Sub-License Agreement transferring and assigning the License Agreement to Grumpy Beverage. Following this assignment of its right under the License Agreement to Grumpy Beverage, Grenade Beverage ceased any business operations and no longer conducts any business.

## NATURE OF THE ACTION

1.      Defendants deny the allegations of paragraph 1.

2.      Defendants deny the allegations of paragraph 2.

3.      Defendants deny the allegations of paragraph 3.

## JURISDICTION AND VENUE

4.      Defendants admit the allegations of paragraphs 4.

5.      Defendants admit the allegations of paragraph 5.

6.      Defendants admit the allegations of paragraph 6.

## THE PARTIES

7.      Defendants admit the allegations of paragraph 7.

8.      In answering paragraph 8, the defendants aver that Grenade Beverage was identified as

the "Licensee" only due to the fact that it was then an existing legal entity and thus used as a conduit by which plaintiff Grumpy Cat would transmit the License Agreement with the ultimate license holder agreed to be Grumpy Beverage and in which Grumpy Cat would have a ten percent member interest. Defendants admit that Grenade was a California limited liability company at the time of the execution of the License Agreement and of the Sub-License Agreement and at that time was doing business in the State of California and the County of Orange.  Defendants answer further that Grenade is no longer a California limited liability company and no longer does any business.

9.      Defendants admit that Paul Sandford is an individual residing in the County of Orange. Defendants admit that, in his capacity as a manager of Grumpy Beverage, Paul Sandford has conducted the business of Grumpy Beverage within the County of Los Angeles.

10.     Defendants admit that Nick Sandford is an individual residing in the County of Orange. Defendants admit that, in his capacity as an employee of Grumpy Beverage, Nick Sandford has conducted the business of Grumpy Beverage within the County of Los Angeles.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 and on that basis deny each and every of the allegations contained therein.

12.     The allegations of Paragraph 12 of the complaint constitute a statement or conclusion of law to which no response is required.  To the extent that this paragraph contains any factual allegations, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 and on that basis deny each and every allegation contained therein.

### FACTS COMMON TO ALL CLAIMS

13.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 and on that basis deny each and every of the allegations contained therein.

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 and on that basis deny each and every of the allegations contained therein.

15.     Defendants admit the allegations of paragraph 15.

16.     Defendants admit the allegations of paragraph 16.

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 and on that basis deny each and every of the allegations contained therein.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 and on that basis deny each and every of the allegations contained therein.

**The License Agreement Between Plaintiff and Grenade**

19.     Defendants deny that Nick Sandford and Paul Sandford own Grenade Beverage. Defendants deny that Nick Sandford and Paul Sandford operate Grenade Beverage. The remaining allegations of paragraph 19 constitute a statement and conclusion of law to which no response is required.   To the extent this paragraph contain factual allegations other than those to which the defendants have responded, Defendants deny that thy made the claimed representations to the plaintiff to induce the plaintiff to grant the License.

20.     Defendants admit that by written License Agreement dated May 31, 2013 but signed June 3, 2013, plaintiff granted certain limited rights to use Grumpy Cat's copyrighted or trademarked name and image in connection with the advertisement, distribution, offering for sale, and the sale of a line of Grumpy Cat – branded coffee products.  Defendants also admit that in exchange for the grant of the License which License Agreement is appended as Exhibit "1" and incorporated in this answer to paragraph 20, it was agreed that Plaintiff would receive royalties including the advance of royalties.

21.     Defendants deny the allegations of paragraph 21 that the mutually understood intent of the License Agreement was to allow the production and distribution of a line of "Grumpy Cat" branded iced-coffee beverages called "Grumpy Cat Grumppucino." Defendants admit that the License Agreement, appended as Exhibit "1" provides that all uses of the Licensed Properties as well as any visual depictions, interpretations, and adaptations thereof created by or for Licenses for use on Products or otherwise in the Product Category or in the advertisement or promotion of any of the foregoing as well as all Products on which such works are to be depicted on, shall be subject to Licensor's prior approval, as is provide in Section 4(a) of the License Agreement.

22.     The allegations of paragraph 22 that certain terms or conditions of the License Agreement are relevant constitutes a statement or conclusion of law to which no response is required. To the extent this paragraph contains factual allegations, defendants deny the allegations of paragraph 22.

### Defendants' Wrongful Conduct

23.     Defendants deny the allegations of paragraph 23.

24.     Defendants deny the allegations of paragraph 24.

25.     Defendants admit that advertised and offered for sale Grumpy Cat Roasted Coffee. Defendants deny the remaining allegations of paragraph 25.

26.     Defendants deny the allegations of paragraph 26.

27.     Defendants deny the allegations of paragraph 27.

28.     Defendants admit that defendants or some of them own the website. www.drinkgrumpycat.com.  Defendants deny the remaining allegations of paragraph 28.

29.     Defendants deny the allegations of paragraph 29.

30.     Defendants admit that Grumpy Beverage, LLC was formed as a Texas Limited Liability Company.  Defendants deny the remaining allegations of paragraph 30.

31.     Defendants deny the allegations of paragraph 31.

### FIRST CLAIM FOR RELIEF

### (Copyright Infringement, 17 U.S.C. section 101, et seq.)

### (Against All Defendants)

32.     Defendants refer to and incorporate by reference herein all previous admissions, denials, and lack of knowledge or information sufficient to form a belief about the truth of all previous allegations of this answer.

33.     Defendants admit that the plaintiff has informed them that plaintiff is the exclusive owner of the Grumpy Cat Copyrights, and has registered its copyright interests therein with the United States Copyright Office.

34.     Defendants deny the allegations of paragraph 34.

35.     Defendants deny that they have engaged in any "infringing conduct." Defendants deny,

further, that the plaintiff has not authorized or consented to the marketing and sale of items and products identified in the complaint.

36. Defendants deny the allegations of paragraph 36.

37. Defendants deny the allegations of paragraph 37.

38. Defendants deny the allegations of paragraph 38.

39. Defendants deny the allegations of paragraph 39.

40. Defendants deny the allegations of paragraph 40.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement, 15 U.S.C. section 1114)

### (Against all Defendants)

41. Defendants refer to and incorporate by reference herein all previous admissions, denials, and lack of knowledge or information sufficient to form a belief about the truth of all previous allegations of this answer.

42. Defendants admit that the plaintiff has informed defendants that plaintiff is the owner of the Federal Word Marks and the Federal Design Marks which marks are registered with the United States Patent and Trademark Office.

43. Defendants deny the allegations of paragraph 43.

44. Defendants deny the allegations of paragraph 44.

45. Defendants deny the allegations of paragraph 45.

46. Defendants deny the allegations of paragraph 46.

47. Defendants deny the allegations of paragraph 47.

48. Defendants deny the allegations of paragraph 48.

49. Defendants deny the allegations of paragraph 49.

## THIRD CLAIM FOR RELIEF

### (Trademark Infringement and False Designation of Origin, 15 U.S.C. section 1125(a))

### (Against All Defendants)

50. Defendants refer to and incorporate by reference herein all of the previous admissions, denials, and lack of knowledge or information sufficient to form a belief about the truth of all previous

1    allegations of this answer.

2         51.    Defendants lack knowledge or information sufficient to form a belief as to the truth of

3    the allegations of paragraph 51 and on the basis deny each and every of the allegations contained

4    therein.

5         52.    Defendants deny the allegations of paragraph 52.

6         53.    Defendants deny the allegations of paragraph 53.

7         54.    Defendants deny the allegations of paragraph 54.

8         55.    Defendants deny the allegations of paragraph 55.

9         56.    Defendants deny the allegations of paragraph 56.

10        57.    Defendants deny the allegations of paragraph 57.

11        58.    Defendants deny the allegations of paragraph 58.

12        59.    Defendants deny the allegations of paragraph 59.

13                            **FOURTH CLAIM FOR RELIEF**

14              **(Trademark Dilution, 15 U.S.C. section 1125(c))**

15                          **(Against All Defendants)**

16        60.    Defendants refer to and incorporate by reference herein all of the previous admissions,

17   denials, and lack of knowledge or information sufficient to form a belief about the truth of the previous

18   allegations of this answer.

19        61.    Defendants lack knowledge or information sufficient to form a belief as to the truth of

20   the allegations of paragraph 61 and on that basis deny each and every allegation contained therein.

21        62.    Defendants deny the allegations of paragraph 62.

22        63.    Defendants deny the allegations of paragraph 63.

23        64.    Defendants deny the allegations of paragraph 64.

24        65.    Defendants deny the allegations of paragraph 65.

25        66.    Defendants deny the allegations of paragraph 66.

26        67.    Defendants deny the allegations of paragraph 67.

27   //

28   //

## FIFTH CLAIM FOR RELIEF

### (Cybersquatting, 15 U.S.C. section 1125(d))

### (Against All Defendants)

68.     Defendants refer to and incorporate by reference herein all of the previous admissions, denials, and lack of knowledge or information sufficient to form a belief as to the truth of the previous allegations of this answer.

69.     Defendants deny the allegations of paragraph 69.

70.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 70 and on that basis deny the allegations contained therein.

71.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 71 and on that basis deny the allegations contained therein.

72.     Defendants deny the allegations of paragraph 72.

73.     Defendants deny the allegations of paragraph 73.

74.     Defendants deny the allegations of paragraph 74.

75.     Defendants deny the allegations of paragraph 75.

76.     Defendants deny the allegations of paragraph 76.

77.     Defendants deny the allegations of paragraph 77.

## SIXTH CLAIM FO RELIEF

### (Breach of Contract)

### (Against Grenade)

78.     Defendants refer to and incorporate by reference herein all of the previous admissions, denials, and lack of knowledge or information sufficient to form a belief as to the truth of the previous allegations of this answer.

79.     Defendants admit the allegations of paragraph 79.

80.     Defendants admit the allegations of paragraph 80.

81.     Defendants deny the allegations of paragraph 81.

82.     Defendants deny the allegations of paragraph 82.

83. Defendants deny the allegations of paragraph 83.

84. Defendants deny the allegations of paragraph 84.

85. Defendants deny the allegations of paragraph 85.

## SEVENTH CLAIM FOR RELIEF

### (Accounting)

### (Against All Defendants)

86. Defendants refer to and incorporate by reference herein all previous admissions, denials, and lack of knowledge or information sufficient to form a belief about the truth of all previous allegations of this answer.

87. Defendants deny the allegations of paragraph 87.

88. Defendants deny the allegations of paragraph 88.

89. Defendants deny the allegations of paragraph 89.

## FIRST AFFIRMATIVE DEFENSE

1. The complaint alleges Defendants infringed upon the mark and/or copyright marketing a product identified in the Complaint as "Grumpy Cat Roasted Coffee." The complaint alleges that this infringement results from (1) the limitations of the License Agreement that defendants were allowed to manufacture, sell and distribute "Grumpy Cat branded iced-coffee beverages", only and (2) by failing to obtain the Plaintiff's prior approval for the manufacture, sale and distribution of "Grumpy Cat branded roasted coffee."

2. To the contrary, the License Agreement which, pursuant to direction of plaintiff, Grumpy Cat, was assigned and sub-licensed to defendant Grumpy Beverage, makes no reference whatsoever to any "iced-coffee" drink or any related restrictions. The License Agreement those products subject to the license as "Grumpy Cat-branded coffee products" and identifies the international classes to include 030 – Coffee and Tea, and 032 – Soft Drinks, Fruit Drinks and Fruit Juices.

3. Further, prior to marketing or offering for sale any "Grumpy Cat" roasted coffee beans, defendants provided the plaintiff with not less than three product samples of the proposed roasted coffee product and received the plaintiff's approval for the marketing and sale of that product.

coffee product and received the plaintiff's approval for the marketing and sale of that product.

4.      It was only after giving that approval and after complaints from the Defendants that the plaintiff was continually refusing to assist defendants with the marketing of its licensed products in violation of Section 2(c) of the License Agreement, that plaintiff suddenly declared that approval had not been given.  Nonetheless, defendants had received consent and approval for the marketing and sale of the "Grumpy Cat" roasted coffee and in reliance on that approval undertook to cause the product to be manufactured, marketed and made available for purchase.

5.      Thus the complaint is barred by the doctrine of unclean hands, improper and/or unlawful conduct, waiver, laches, estoppel and fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

6.      The Plaintiff's complaint and each and every claim for relief, fails to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

7.      Plaintiff's claims are barred by the doctrines of unclean hands, improper and/or unlawful conduct, waiver, laches, and/or estoppel.

## FOURTH AFFIRMATIVE DEFENSE

8.      These answering defendants are informed and believe that the Plaintiff's claims are barred to the extent that the allegedly unlawful or infringing use of the marks was licensed or otherwise authorized by the plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

9.      These answering defendants are informed and believe that plaintiff has waived any rights or claims which may be asserted against these defendants in relation to this matter.  Plaintiff has thereby waived any right to recovery from the defendants.

## SIXTH AFFIRMATIVE DEFENSE

10.      These answering defendants allege that the acts, conduct or omissions of the defendants, if any, were legally justified.

## SEVENTH AFFIRMATIVE DEFENSE

11.      These answering defendants allege that the Plaintiff has failed to include as defendants

each and every party whose presence as a party is essential to the adjudication of this action.

## EIGHTH AFFIRMATIVE DEFENSE

12.     No impairment or harm to Grumpy Cat's mark exists.

## NINTH AFFIRMATIVE DEFENSE

13.     These answering defendants allege that the Plaintiff has sustained no damage or that any claimed damage was not proximately caused or contributed to by the defendants.

## TENTH AFFIRMATIVE DEFENSE

14.     Pursuant to the License Agreement and, particularly section 6(d) thereof, appended as Exhibit "1" and at the direction of the Plaintiff, all right, title and interest in the License Agreement was assigned and sub-licensed to Grumpy Beverage.   Grumpy Beverage is the proper party to be named as a defendant based upon the claims asserted by the Plaintiff in its complaint and is a necessary party for the complete adjudication of the claims asserted by the Plaintiff.

15.     Plaintiff is an owner of a 10% interest in Grumpy Beverage as specifically set out in the License Agreement at section 6(d) thereof.

16.     The gravamen of the plaintiff's complaint is the assertion that the licensee, here actually Grumpy Beverage, has violated the license agreement resulting in, among other things, the potential of damage incurred by Grumpy Beverage and thus harm and injury to its members and owners, which include the plaintiff.  As such, plaintiff is limited to a derivative action against Grumpy Beverage.

## ELEVENTH AFFIRMATIVE DEFENSE

17. Defendants allege that the Plaintiff has abandoned the subject mark.

DEFENDANTS' PRAYER FOR RELIEF

Defendants pray for the following relief:

1.     Dismissal of the complaint with prejudice, and judgment entered in Defendants' favor, and against Grumpy Cat;

2.     Costs of suit;

3.     Reasonable attorneys' fees; and

4.     Such other and further relief as the court deems just and proper.

11

1     DEMAND FOR JURY TRIAL

2         1.      Defendants demand a jury trial for all issues triable by jury.

3  DATED: February 24, 2016

                                        GULINO LAW OFFICE

                                            /s/ John J. Gulino

                              By _____
                                   John J. Gulino
                                   Attorneys for Defendants
                                   Grumpy Beverage, LLC, Paul Sandford and
                                   Nick Sandford

# CERTIFICATE OF SERVICE

I, John J. Gulino , declare:

At the time of service I was over 18 years of age, and not a party to this action.  My business address is 2107 North Broadway, Suite 309, Santa Ana, California 92706

On February 24, 2016, I served the following document(s) on the parties in the within action:

## ANSWER TO COMPLAINT OF GRUMPY CAT LIMITED

|   | |
|---|---|
| | **BY MAIL**:  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed below, and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.   On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY OVERNIGHT SERVICE**:  I enclosed the document(s) in an envelope or package, and addressed to the persons listed below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FACSIMILE**:   Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below.  No error was reported by the fax machine I used. |
| | **BY E-MAIL:**  Based on a court order or an agreement of the parties to accept service by e-mail, I attached the document(s) to an e-mail message, and invoked the send command to transmit the e-mail message to the person(s) at the e-mail address(es) listed below.  I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful. |
| X | **BY ECF**: I attached and submitted the above-described document(s) to the ECF system for filing. |

David B. Jonelis

LAVELY 7 SINGER
2049 Century Park East
Suite 2400
Los Angeles, CA 90067-2906

Attorneys For Plaintiff
GRUMPY BEVERAGE LIMITED

I declare under penalty of perjury under the laws of the United States of America that the foregoing is a true and correct statement, and this certificate was executed on February 24, 2016.

/s/ John J. Gulino

By _____

John J. Gulino

EXHIBIT "1"

**GRUMPY CAT LIMITED**
c/o Kia Kamran P.C.
A Professional Corporation
1100 Glendon Avenue FL14
Los Angeles, CA 90024

**Dated as of May 31, 2013**

Mssrs. Paul and Nick Sandford
Grenade Beverage LLC
2030 E 4th Street, Ste 212D
Santa Ana, CA 92705

<u>Re:    Grumpy Cat Coffee / Grenade Beverage, LLC / License Agreement</u>

Gentlemen;

GRUMPY CAT LIMITED (hereinafter referred to as "Licensor"), is an Ohio Limited Liability entity and owns and controls all copyrights, trademarks, and other intellectual property rights in and to "Grumpy Cat".

GRENADE BEVERAGE LLC (the "Licensee") is a beverage brand development, manufacturing, marketing, and distribution company, wishing to market and sell a line of Grumpy Cat-branded coffee products.

Licensor and Licensee (each a "Party" and collectively the "Parties") have therefore agreed to enter into this licensing agreement (the "Agreement") together for the purposes of exploiting such products.

NOW THEREFORE, in consideration of the mutual covenants hereinafter set forth, the Parties, intending to legally bind themselves, hereby agree as follows; the terms and conditions hereof shall supersede any and all prior agreements between the Parties hereto.

<u>1.    DEFINITIONS.</u>

In addition to the other capitalized terms defined herein, the following terms shall be defined as set forth below:

(a)    "Product Category" shall mean non-alcoholic beverages.

(b)    "Products" shall mean a line of Grumpy Cat-branded coffee products, or other additional products within the Product Category that may, upon the Parties' mutual approval, be marketed hereunder.

Initials: Licensee _____ Licensee _____

(b)     "Contract Territory" shall mean the Universe.

(c)     "Licensed Properties" shall mean the "Grumpy Cat" word trademark in International Classes 030 (Coffee and Tea) and 032 (Soft drinks; fruit drinks; fruit juices), as currently subject to United States Patent and Trademark Office application serial number 85879257, and the Grumpy Cat image trademark (depicted immediately below) in International Classes 030 (Coffee and Tea) and 032 (Soft drinks; fruit drinks; fruit juices), as currently subject to United States Patent and Trademark Office application serial number 85879272, and the "Grumpy Cat" Image (depicted immediately below) copyright (US © office Reg. No. VA 1-849-042).



## 2.     GRANT OF RIGHTS.

(a)     Licensor hereby grants to Licensee, and Licensee hereby accepts from Licensor, the exclusive, non-assignable, non-sublicensable (except as set forth in Paragraphs 6[c] and 13 below), non-transferable right, license and privilege, solely during the Term, solely in the Product Category of utilizing Licensor's Licensed Properties in connection with the manufacture, advertisement, merchandising, promotion, distribution, and sale of solely Products, in any and all media and forms of communication and through all channels of trade and distribution throughout the Contract Territory during the Term defined in Paragraph 3 below.

(b)     Notwithstanding the exclusive rights in Paragraph 2(a) above, Licensor reserves unto itself any and all rights in and to the Licensed Properties, and in any and all products and product categories which are not specifically granted herein, including the rights to alter, modify, or adapt the Licensed Properties.

(c)     Licensor shall actively cooperate with Licensee in its marketing and advertising efforts involving the Products, which shall include reasonable use of Licensor's social media sites for such purposes, but always subject to Licensor's final discretionary approval of the Materials (defined below) to be used, the messaging involved, and the presentation and frequency thereof.

## 3     TERM.

The duration of this Agreement shall commence as of the date hereof, and shall initially continue until December 31, 2015 (the "Initial Period"). The Term shall thereafter be automatically renewed for a period of five (5) years in each instance (each a "Renewal Period"), unless a Termination Event (described in Paragraph 12 below) has occurred.



The Initial Period and the Renewal Period(s) shall collectively hereinafter be referred to as the "Term".

4.    APPROVALS AND OWNERSHIP.

(a)    All uses of the Licensed Properties, as well as any visual depictions, interpretations, and adaptations thereof created by or for Licensee for use on Products or otherwise in the Product Category or in the advertisement or promotion of any of the foregoing (the "Works"), as well as all Products on which such Works are to be depicted on, shall be subject to Licensor's prior approval.  Licensor shall receive three (3) production samples of the Works and of each Product of its review and approval.  After Licensor's exercise of such right of approval on a case-by-case basis, Licensee shall have the right to prepare such approved Works, and use the same on approved Products. The foregoing approval requirement shall also apply to all uses of the Works for advertising and promotion of Products.

(b)    All right, title and interest in and to all copyrights and trademarks in and to the Licensed Properties shall at all times be owned by, and remain the property of, exclusively Licensor, and Licensee covenants and agrees that this Agreement shall be deemed a license, not a transfer, of Licensor's rights in the Licensed Properties.  All Works created hereunder by Licensee or any of its agents and/or employees embodying the Licensed Properties, including any adaptations thereof or derivations therefrom (which shall at all times be made solely with the prior written consent of Licensor) and the right to copyright and/or trademark therein, shall from the inception of its creation, be the sole and exclusive property of Licensor throughout the Territory in perpetuity within the meaning of the Copyright and Trademark Laws throughout the world, free of any claim whatsoever by Licensee or by any persons deriving any rights or interests therefrom.  Licensor and its designees shall have the exclusive right to copyright and trademark the Works in its name as the author and owner thereof and to secure any and all renewals and extensions of such copyrights and trademarks throughout the world.  Licensee shall execute and deliver to Licensor such instruments of transfer and other documents regarding the rights of Licensor or its designees in the Works subject to carry out the purposes of this Agreement, and Licensor may sign such documents in Licensee's name (and Licensee hereby appoints Licensor its agent and Attorney in Fact for such purposes, which appointment is coupled with an interest and therefore irrevocable) and make appropriate dispositions of them consistent with this Agreement.

5.    ADVANCE.

(a)    For and in consideration of the rights granted herein, upon execution hereof, Licensee shall pay Licensor the non-returnable, non-refundable (but recoupable) sum of One Hundred and Twenty Five Thousand ($125,000) US Dollars.



    (b)    In addition, upon achievement of sales of the first five thousand (5,000) cases of Products, Licensee shall pay Licensor the additional non-returnable, non-refundable (but recoupable) sum of <u>Twenty Five Thousand ($25,000) US Dollars.</u>

    (c)    All payments made to Licensee pursuant to this Paragraph 5 shall be deemed an advance and pre-payment of royalties payable to Licensee pursuant to Paragraph 6 below.

## 6.    <u>ROYALTIES / EQUITY.</u>

    (a)    <u>Wholesale Sales</u>:  With respect to Net Sales (defined below) of Products through wholesale channels, (e.g. through distributors and third-party retail outlets) ("Wholesale Sales"), Licensee shall pay to Licensor Five Percent (5.0%) of the sales price of Products (based on wholesale price).

    (b)    <u>Retail Sales</u>: With respect to direct-to-consumer Net Sales of Products by or through Licensee ("Retail Sales"), Licensee shall pay to Licensor six percent (6.0%) of the selling price (based on retail price) per each unit of Products sold, plus the wholesale royalty in 6(a) above based on the wholesale price applicable to such Retail Sales.

    (c)    As used herein, "Net Sales" shall mean all sales of Products during the applicable period after the deduction solely of <u>actual</u> shipping and freight charges applicable to such sales, and subject also to any actual price discounts applicable to Wholesale Sales or Retail Sales, as well as allowances for returns, if any.  There shall be no non-actual deductions.

    (d)    <u>Equity:</u>  Within sixty (60) days of the execution hereof, Licensee shall form a California Limited Liability to be named "<u>Grumpy Beverage LLC</u>" (the "Company") to act as the exclusive rightsholder of all rights in and to the Licensed Properties granted herein as an exclusive sub-licensee of Licensee of such rights, and the exclusive operating entity in connection with the sales and exploitations of the Products anticipated hereunder, and in which Licensor shall own an immediately-vested, non-dilutable ten percent (10%) Membership Interest (including all voting and financial participation rights), with the remaining 90% Membership Interest or Financial Interest (as the case may be) to be distributed amongst Licensee and various other investor members to be determined by Licensee (the "Licensee Affiliates").  Licensor and Licensee shall further negotiate in good faith the terms of the Company's Operating Agreement, which shall not conflict with the terms hereof, and shall further contain standard non dilution, tag-along, drag-along, and other standard provisions.  Subject to compliance with Licensor's foregoing requirements, the Licensee Affiliates' Membership Interest in the Company may be held through another entity.  Licensor's equity in the Company shall be in addition to any other compensation and royalties payable to it hereunder.

(e)    **Non-Commercial Units:**  No royalties shall be payable on non-commercial units of the Products distributed (i.e. actually given away for promotional purposes at no charge).

## 7.    ACCOUNTING AND AUDIT.

(a)    Accountings as to royalties accruing or which otherwise would have accrued hereunder with respect to sales of Products shall be made to Licensor within ten (10) days following the last day of each calendar month, together with payment of accrued royalties earned by Licensor therefrom, less the amount of any previously unrecouped Advances.  Statements shall contain a reasonably detailed accounting of Products sold, the selling price thereof, and the deductions and charges made therefrom.

(b)    Royalties for Products sold for sale (and/or other monies from exploitation of Licensee's rights hereunder) outside of the United States by Licensee (or Company) shall be computed in the same national currency as Licensee is accounted to and shall be paid at the same rate of exchange as Licensee is paid.  If Licensee does not receive payment in the United States, and shall be required to accept payment in a foreign country or in foreign currency, at Licensor's request, Licensee shall deposit to the credit of Licensor or in a bank account of Licensor's designation, in such currency in a depository in the country in which Licensee is required to accept payment, Licensor's share of royalties due and payable to Licensor with respect to such sales.

(c)    Licensee shall keep reasonably detailed, true and correct books and accounts relating to the sales of Products, and all other financial information related thereto.  Licensor (or a representative on its behalf) shall have the right at Licensor's own expense to examine, audit, and make copies of Licensee's books and records as the same pertain to activities under this Agreement.  Such audit shall be conducted, upon thirty (30) days' prior written notice to Licensee, and at Licensee's regular place of business in the United States where Licensee keeps the books and records to be examined.  If any such aforesaid inspection reveals an accounting error of more than five per cent (5%) for the period under review, then Licensee shall reimburse Licensor an amount equal to the reasonable costs directly incurred by Licensor from such particular inspection and, in addition, Licensee shall pay to Licensor any amount discovered to be still due, together with simple interest thereon at the rate of eighteen per cent (18%) per annum for the amount due from the time when payment thereof should have been made pursuant hereto until the time of actual payment thereof on behalf of or by Licensee.  Licensor's inspection and audit rights hereunder shall be in addition to any examination rights it may have pursuant to the Company's Operating Agreement.

(d)    Timely accountings and payment of royalties shall be of the essence in this Agreement.  Without limiting Licensor's other remedies hereunder in the event of breach, Licensee's repeated failure to render timely accounting and payments shall be deemed due cause for termination by Licensor hereunder.

Initials: Licensee _____  Licensee _____

## 8.     LABELING AND CREDIT.

Licensee warrants, represents, and covenants that Licensee shall affix the following copyright notice to all Licensed Products: "Grumpy Cat and related Artwork © and ™ Grumpy Cat Limited, Used Under Exclusive License".   Licensee warrants, represents, and covenants that, upon Licensor's obtaining of its trademark registration with the US Patent and Trademark Office, it shall use the "®" (circle-R / Registered trademark indication) in conjunction with any uses of the Licensed Properties on any materials bearing the same.

## 9.     LICENSOR ALLOTMENTS AND PURCHASE RIGHTS.

Licensor shall, upon request, be entitled to receive (i) unlimited units of Licensed Products for promotional purposes at no charge, or (ii) for direct sales by Licensor during personal appearances and through Licensor-affiliated websites subject to a discounted wholesale price.  No royalties shall be payable on Licensor-allotted Products.

## 10.     WARRANTIES & REPRESENTATIONS / INDEMNITY.

(a)     In addition to the other warranties and representations made herein, both Parties warrant and represent that:

(i)     Each Party is a duly organized, validly existing legal entity and in good standing under the laws of the jurisdiction of its formation.  Each Party has full power and authority to conduct business, and enter into and perform this Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith.

(ii)     The execution and delivery of this Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith and such Party's performance of its obligations hereunder and thereunder have been duly and validly authorized by all action required to be taken by such Party, its members, shareholders and directors.  This Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith are (or when executed and delivered by each Party will be) valid and binding obligations of each Party, enforceable against each Party in accordance with their respective terms.

(iii)     Each Party has full power and authority under its corporate documents, by-laws, or operating agreements, to enter into this Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith, to make the warranties and representations herein, and to undertake and fulfill all obligations of each such Party as set forth in this Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith.

Initials: Licensee _____   Licensee _____

(iv)   Neither Party is a named party to, or is subject to, any judgment, order, decree, writ, injunction or award of any court, arbitrator or government agency or instrumentality which could (A) encumber the Licensed Properties in any manner, (B) prevent the execution or performance of this Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith, or the consummation of the principal transactions contemplated hereby; (C) adversely limit each Party's performance of this Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith, or the consummation of the principal transactions contemplated hereby.

(v)   Neither the execution, delivery nor performance of any of this Agreement and all other agreements and documents executed or anticipated hereunder in connection herewith will conflict with any statute, regulation or other provision of law, or any order, judgment or other direction of a court or other tribunal, or any other governmental requirement or authorization applicable to each Party or any of its assets.

(vi)   Each Party is in compliance in all material respects with all laws, rules, regulations, ordinances and requirements, judgments, licenses or governmental authorizations applicable to its respective businesses, operations, assets and liabilities, and each Party has not received any notice of, and knows of no basis for, any violation thereof, and each Party has filed with the appropriate authorities all reports required by law, rule or regulation to be filed by each Party.

(b)   In addition to the other warranties and representations made herein, Licensor warrants and represents that Licensor owns or controls and can grant to Licensee all rights in and to the Licensed Properties necessary for the exploitation of Products by Licensee hereunder and that the permitted exercise by Licensee of such rights will not infringe upon the rights of any person, firm or corporation.

(c)   In addition to the other warranties, and representations made herein, Licensee warrants and represents that (i) Licensee owns or controls, or has duly licensed, all rights in and to any other materials and formulations embodied on or within the Products other than the Licensed Properties (the "Other Materials"), as well as all marketing and publicity materials used in connection therewith or related thereto, and that the exploitation by Licensee of such rights will not infringe upon the rights of any person, firm or corporation, or violate any laws (including but not limited to deceptive advertising, labeling, and/or other requirements; (ii) as between licensor and Licensee, Licensee shall be solely responsible for obtaining and compliance with all necessary permits, labeling, franchising, and other legal or administrative requirements necessary to conduct its (or the Company's) business, including but not limited to compliance with manufacturing, employment, and any and all other similar or related requirements, (iii) neither the Products, nor the process used in the marketing, advertisement, manufacture, sale, and distribution thereof, nor the use thereof by any person shall expose Licensor to any claims of product liability, injury, or other similar claims (including claims of non-compliance with any laws, rules, regulations, ordinances,

Initials: Licensor _____ Licensee _____

requirements, judgments, licenses or governmental or administrative authorizations of any kind) related to the Products, or the marketing, advertisement, manufacture, sale, or distribution thereof, regardless of how the Products are used, marketed, or sold.

(d)     (i)     Licensor hereby agrees to indemnify and hold harmless Licensee and its subsidiaries and affiliates, and respective directors, officers, employees, agents, shareholders, partners, members and other owners, against any and all claims, actions, demands, liabilities, losses, damages, judgments, settlements, costs and expenses (including reasonable attorneys' fees) (any or all of the foregoing claims and losses hereinafter referred to as "Losses") insofar as such Losses (or actions in respect thereof) arise out of or are based on any breach by Licensor of any covenant, agreement, representation or warranty made by it herein or the use by the Licensee of the trademarks, content or materials of the Licensor in accordance with the terms hereof provided that any such claim and Losses are reduced to a final judgment or are settled with the Licensor's consent (not to be unreasonably withheld).

(ii)     Licensee hereby agrees to indemnify and hold harmless Licensor and its subsidiaries and affiliates, and respective directors, officers, employees, agents, shareholders, partners, members and other owners, against any and all Losses insofar as such Losses (or actions in respect thereof) arise out of or are based on any breach by Licensee of any covenant, agreement, representation or warranty made by it herein provided that any such Losses are reduced to a final judgment or are settled with the Licensee's consent (not to be unreasonably withheld).  All of Licensee's representations, warranties, and indemnifications made herein are made on behalf of, and apply to, Licensee itself as well as Licensee's Affiliates.

(iii)     <u>Unilateral Indemnification by Licensee for Products Liability</u>. Licensee shall defend, indemnify, and hold Licensor, its employees, representatives, agents, affiliates, associates, partners, and sub contractors, and their successors, heirs, and assigns harmless from and against all claims, liabilities, losses, costs, expenses (including but not limited to all attorneys' fees and costs), suits, actions, damages, regulatory proceedings, judgments, or awards (whether by a court or any administrative body) incurred or otherwise suffered by Licensor by reason of any defect in the Products, the use, misuse, and promotion of such products, any negligence or misconduct on the part of Licensee in connection with such products, and any information or material supplied by Licensee to Licensor.  Licensee's indemnification hereunder shall extend but not be limited to any personal injury claims, product-liability claims, or other claims in connection with the demonstration, promotion, sales, use, misuse, or sales of Licensee's products.

(e)     Without in any way limiting Licensee's indemnification obligations pursuant to the preceding paragraphs, Licensee shall obtain and maintain at its sole expense, commencing at least sixty (60) days prior to the first shipment of Licensed Products, commercial general liability insurance and products liability insurance naming Licensor as an additional insured party from a qualified insurance carrier acceptable to

Licensor in the amount of at least two million US Dollars ($2,000,000) in the aggregate. Such insurance shall be non-cancelable during the Term hereof. Licensee shall provide Licensor with a copy of a certificate evidencing the policy described above.

(f)     All of Licensee's representations, warranties, and indemnifications made herein are made on behalf of Licensee itself as well as on behalf of all of Licensee's Affiliates, and shall apply to Licensee and all of Licensee's Affiliates.

## 11.     QUALITY PROVISIONS / ENFORCEMENT.

(a)     Licensee agrees that the nature and quality of all Products sampled, sold, or otherwise disposed of by Licensee and embodying the Licensed Properties shall conform to the standards set by and under the control of Licensor (hereinafter, "Quality Standard"). Such Quality Standard shall be reasonable.

(b)     Licensee shall, upon Licensor's request, supply samples of any Products sampled, sold, or otherwise disposed of by Licensee that include the Licensed Properties to Licensor for Licensor's inspection. Alternatively, Licensor may request Licensee to assure that such products conform to the Quality Standard and, to this end, Licensee shall permit reasonable inspection during business hours by an authorized representative of Licensor of Licensee's facilities to inspect Licensee's operations, methods of manufacture, materials used, storage and packing areas, and the like, associated with the manufacture of products that include the Licensed Properties.

(c)     Licensee shall deliver to Licensor, upon Licensor's request and without charge to Licensor, representative samples of labels, containers, advertisements, catalogs, letterhead, and the like, containing the Licensed Properties to enable Licensor to ensure that such Licensed Properties is used only in a manner in compliance with the Quality Standard.

(d)     Licensor shall have the right to impose on Licensee, as necessary, other specifications or requirements not provided for under this Paragraph to maintain control over the Licensed Properties to ensure the requisite Quality Standard with respect to products manufactured by Licensee that include the Licensed Properties.

(e)     Each party hereto shall promptly notify the other party hereto of any and all infringements, imitations, simulations or other illegal or improper use or misuse of the Licensed Properties which comes to such party's attention. Licensor shall promptly determine whether it wants to take (at the Licensor's expense) any action to prevent the infringement, imitation, simulation or other illegal or improper use or misuse of the Licensed Properties. If Licensor elects not to take such action or does not promptly take such necessary or desirable actions, Licensee may take such action at the Licensee's expense. In either event, each party shall, at its expense, cooperate in such action including, without limitation, joining as a party. Any money recovered by way of damages or otherwise with respect to any action taken by Licensor shall be kept by

Initials: Licensor _____ Licensee _____

Licensor.  In the case where the Licensee takes such action, Licensor shall be entitled to 50% of such recovery, after the off-the-top deduction of any and all litigation costs and expenses.

## 12.    TERMINATION EVENTS.

In addition to any of Licensor's legal rights and remedies in the event of Licensee's breach or failure to perform its material obligations hereunder, each of the following shall further constitute a "Termination Event" hereunder, entitling Licensor to, at any time during the Term, upon notice to Licensee, and Licensee's failure to cure such default within thirty (30) days of such notice (or other period specified herein), terminate this Agreement and all rights granted herein, in which event all rights in and to the Licensed Properties shall immediately revert back to Licensor.  The several rights and remedies herein expressly reserved to Licensee shall be cumulative, and none of them shall be exclusive of any other(s), or in lieu of or in limitation thereof, or of any right, remedy or priority allowed by law (including, without limitation, injunctive relief and termination).  Licensor's termination rights pursuant to this Paragraph 12 shall be in addition to any other rights and remedies it may have hereunder or otherwise pursuant to the terms of the Operating Agreement.

        (a)    If at any time prior to the availability for sale to the general public of the Product, Licensee ceases to operate as an ongoing beverage business entity, or exits the beverage business altogether.

        (b)    If the first of the Products is not available for sale to the general public by May 30, 2014, or notwithstanding the foregoing, if at any time prior to the foregoing date, Licensee indicates that it has abandoned its pursuit of developing or marketing the Products.

        (c)    If the Product ceases to be available for sale to the general public, and continues to be unavailable due to reasons other than so-called Force Majeure events for a period exceeding ninety (90) days, or shorter if conditions or circumstances reasonably indicate that the use of Licensed Properties in the Product Category has been abandoned.

        (d)    If Licensee, any of the Licensee Affiliates, or Company commences a voluntary case under any applicable bankruptcy, insolvency or other similar laws now or hereafter in effect or any of the foregoing consents to the entry of an order for relief in any involuntary case under such laws or consents to the appointment of or taking possession by a receiver, liquidator, assignee, trustee or sequestrator (or similar appointee) of Licensee, any of the Licensee Affiliates, or Company or any substantial part of Licensee's, any of the Licensee Affiliates', or Company's property or Licensee, any of the Licensee Affiliates, or Company makes an assignment for the benefit of creditors or takes any act (whether corporate or otherwise) in furtherance of any of the foregoing; or a court having jurisdiction over the affairs or property of Licensee, any of

Initials: Licensor ___ Licensee ___

the Licensee Affiliates, or Company enters a decree or order for relief in respect of Licensee, any of the Licensee Affiliates, or Company or any of Licensee's, any of the Licensee Affiliates', or Company's property in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect or appoints a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar appointee) of Licensee, any of the Licensee Affiliates, or Company or for any substantial part of Licensee's, any of the Licensee Affiliates', or Company's property or orders the winding up or liquidation of Licensee's, any of the Licensee Affiliates', or Company' affairs and such decree or order remains unstayed and in effect for a period of fifteen (15) consecutive days.

(e)     If Licensee fails to, on more than two (2) consecutive occasions, or four (4) occasions in the aggregate, account to and pay Licensor royalties due hereunder.

## 13.     ASSIGNMENT AND SUB-LICENSING.

Licensee may not assign this Agreement or any of its rights hereunder without Licensor's prior written consent. Licensee's sub-licensing rights herein shall be solely limited to sub-licensing its rights hereunder to Company. Licensor may freely assign this Agreement to any third party, in its sole discretion.

## 14.     MISCELLANEOUS.

(a)     Notices. All notices which either of the parties hereto is required or may desire to serve upon the other hereunder shall be sent by certified or registered mail, postage prepaid, return receipt requested, or shall be personally delivered by the notifying party (with written receipt of delivery) or by messenger or courier (with proof of delivery) to the respective party at the applicable address set forth hereinabove. Any notice delivered in accordance with the foregoing shall be deemed received on the date such notice is personally delivered by the notifying party or by messenger or courier, or three (3) business days after such notice is mailed. A mandatory copy of any notices to Licensor shall also be provided to Licensor's attorney Kia Kamran, Esq. to Kia@TuneLaw.Com or FAX: 310-919-1444.

(b)     Attorneys' Fees: In the event that any action, suit, or other proceeding is instituted concerning or arising out of this Agreement, the prevailing party shall recover all of such party's costs and attorneys' fees incurred in each and every such action, suit, or other proceeding, including any and all appeals or petitions therefrom, whether such costs and attorneys' fees incurred prior to or after judgment is entered.

(c)     Severability: In the event any provision of this Agreement shall be adjudicated to be void, illegal, invalid, or unenforceable, the remaining terms and provisions of this Agreement shall not be affected thereby, and each of such remaining terms and provisions of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

Initials: Licensor _____ Licensee _____

(d)     <u>No Adverse Construction</u>.  All Parties have thoroughly participated in the negotiation and drafting of this Agreement through their respective counsel.  The rule that a contract is to be construed against the party drafting the contract is hereby waived, and shall have no applicability in construing this Agreement.

(e)     <u>Successors and Assigns</u>.  All rights, covenants and agreements of the parties contained in this Agreement shall, except as otherwise provided herein, be binding upon and inure to the benefit of their respective successors and assigns.

(f)     <u>Amendment</u>.  This Agreement may be amended solely by the mutual written agreement of all Parties.

(g)     Waiver.  No waiver by either Party, whether express or implied, of any provision of this Agreement or any default hereunder shall affect the other's right to thereafter enforce such provision or to exercise any right or remedy in the event of any other default, whether or not similar.

(h)     <u>Counterparts</u>:  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  The Agreement may be executed by any party through the means of fax copy or by the exchange of signatures through email in unmodifiable digital file formats (e.g. PDF), and such fax or PDF signature shall be effective, valid and enforceable as if it was an original signature for purposes of this Agreement.

(i)     <u>No Limitation.</u>  Licensee's rights and remedies herein shall be cumulative, and none of them shall be exclusive of any other(s), or in lieu of or in limitation thereof, or of any right, remedy or priority allowed by law or pursuant to the terms of the Operating Agreement.

(j)     <u>Integration</u>:  This Agreement, along with its recitals, any exhibits, appendices, addendums, and schedules, all of which are incorporated herein by this reference, encompasses the entire agreement of the parties, and supersedes all previous understandings and agreements between the Parties, whether oral or written. The parties hereby acknowledge and represent, by affixing their hands and seals hereto, that said parties have not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement, made by or on behalf of any other party or any other person or entity whatsoever, prior to the execution of this Agreement.

Initials: Licensor _____ Licensee _____

(k)     Validity: This Agreement shall not be valid unless and until reduced to a final version, duly executed by all parties hereto.

AGREED TO AND ACCEPTED:

GRENADE BEVERAGE, LLC                    GRUMPY CAT LIMITED (LLC)

By: _____             _____
Its: PAUL SANDFORD                        By:
     PRESIDENT                            Bryan Bundesen
Date: 6/3/2013                            Member / Manager

Initials: Licensee _____ Licensee ____

EXHIBIT "2"

SUB- LICENSE AGREEMENT AND ASSIGNMENT OF LICENSE AGREEMENT

This Assignment and Sub-License Agreement ("Agreement") is entered on July 15, 2013, ("Effective Date") between Grenade Beverage LLC, a California Limited Liability Company, ("Sub-Licensor"),  and Grumpy Beverage, LLC, a Texas Limited Liability Company ("Sub-Licensee"), individually referred to in this Agreement as a "Party" and collectively as the "Parties".

In consideration of the benefits and obligations exchanged in this Agreement, the Parties agree as follows:

ARTICLE 1. THE LICENSE AGREEMENT

1.01. License Agreement.  By License Agreement dated May 31, 2013, Grumpy Cat Limited, an Ohio Limited Liability entity, granted to Sub-Licensor, an exclusive right, license and privilege to use the Licensed Properties of Grumpy Cat Limited in connection with the manufacture, advertisement, merchandising, promotion, distribution, and sale of products identified in the License Agreement as Classes 030 (Coffee and Tea) and 032 (Soft drinks; fruit drinks; and fruit juices).  A true and accurate copy of the License Agreement is attached hereto, identified  as Exhibit "1" and incorporated herein by this reference.  As set out in the License Agreement, Licensor and Licensee contemplated the formation of Grumpy Beverage, LLC, which had then not yet been formed, to be the ultimate license holder.

1.02. Right to Assign and Sub-License.  Pursuant to Section 6(d) of the License Agreement, Sub-Licensor was granted the right to assign and/or sub-license the grant provided to the

Sub-Licensor to Grumpy Beverage, LLC, which would then have the sole and exclusive rights identified in the License Agreement to the Licensed Properties identified therein.

### ARTICLE 2. LICENSE GRANT AND LIMITATIONS

2.01. Grant of License. Sub-Licensor hereby grants, and Sub-Licensee hereby accepts, the nontransferable, exclusive, worldwide, sub-license to use the Licensed Properties, subject to the conditions and for the period specified in License Agreement and in this Sub-License Agreement and Assignment.

2.02. Use of Licensed Properties.  Sub-Licensee agrees to use the Licensed Properties identified in the License Agreement at Section 1(c) thereof in compliance with the duties and obligations set out in the License Agreement in connection with the  manufacture, advertisement, merchandising, promotion, distribution, and sale of Grumpy-Cat branded coffee products or other additional products within the Product Category.

2.04. Sub-Licensee's Responsibilities.  Sub-Licensee shall be exclusively responsible for the supervision, management, and control of its use of the Licensed Properties.

2.05. Sub-License Period. The sub-license granted in this Agreement shall br for the term identified in Section 3 of the License Agreement.

### ARTICLE 3. PROPERTY RIGHTS

3.01. Ownership Rights Licensed Properties.   Ownership of the Licensed Properties is as identified in the License Agreement and sub- licensee acknowledges  and agrees that it rights and obligations as they related to the use of the Licensed Properties are solely those set out in the License Agreement.

ARTICLE 4.  INDEMNIFICATION AND LIMITATION OF LIABILITY

4.03. Indemnification by Sub-Licensee. (a) Except as otherwise provided, Sub-Licensee, at its own expense, will defend, indemnify, and hold Sub-Licensor and its agents, representatives and managers,  harmless from any claim made or threatened or any suit or proceeding brought against Sub-Licensor insofar as it is based on an allegation of a breach or failure to comply with the terms and provisions of the License Agreement or any claim of infringement on any copyright, patent or trademark or any other claim brought against the Sub-Licensor regarding or relating to the License Agreement.   Sub- Licensee shall pay any resulting damages, costs and expenses  awarded to a third party, including but not limited to reasonable legal fees.  Sub-Licensee shall defend, indemnify, and hold Licensor harmless,  from and against any and all claims asserted by a third party against Sub-Licensor to the extent such a claim is based or alleges the violation or breach of the License Agreement or the infringement of any right of a third party that arises out of the License Agreement, this Sub-License Agreement, or the assignment to the Sub-Licensee of the rights given or conferred under the License Agreement.


ARTICLE 5. TERMINATION

5.01. Grounds for Automatic Termination. The license granted by this Agreement shall be terminated automatically and without further notice upon the occurrence of any of the following:

(a) Expiration of the term specified in this License Agreement, or of any optional renewal term in the absence of a subsequent renewal in accordance with the terms of the License Agreement or this Sub-License Agreement.

(b) Cessation of business by Sub-Licensee.

ARTICLE 6. GENERAL TERMS AND CONDITIONS

6.01. Notices. Unless otherwise provided in this Agreement, any notice required or permitted by this Agreement to be given to either party shall be deemed to have been duly given if in writing and delivered personally or mailed by first-class, registered, or certified mail, postage prepaid and addressed to the Sub-Licensor or Sub-Licensee at an address or location to be provided by each.

6.02. Assignment of Agreement. Sub-Licensee shall not assign or otherwise transfer its rights under this Sub-License Agreement, including the sub-license granted hereunder, without the prior written consent of Licensor and Sub-Licensor. Any attempt to make such an assignment without Licensor's and Sub-Licensor's written consent shall be void.

6.03. Amendments. Sub- Licensor and Sub-Licensee agree that this Sub-License Agreement can be modified only by a written agreement duly executed by persons authorized to execute agreements on their behalf.

6.04. Nonwaiver. Sub-Licensor and Sub-Licensee agree that no failure to exercise, and no delay in exercising any right, power, or privilege hereunder on the part of either party shall operate as a waiver of any right, power, or privilege. Licensor and Licensee further agree that no single or partial exercise of any right, power, or privilege hereunder shall preclude its further exercise.

6.05. Attorneys' Fees. If any legal action is necessary to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

6.06. Severability. If any part of this Agreement is adjudged by any court of competent jurisdiction to be invalid, that judgment shall not affect or nullify the remainder of this

Agreement, and the effect shall be confined to the part immediately involved in the controversy adjudged.

6.07. Governing Law. This Agreement shall be deemed to have been made in, and shall be construed pursuant to, the laws of the State of California.

6.08. Entire Agreement. Sub- Licensee acknowledges and agrees that this Sub-License Agreement is the complete and exclusive statement of the mutual understanding of the parties, and that it supersedes and cancels all previous written and oral agreements and communications relating to the subject matter of this Sub-License Agreement.

Executed this 15th day of July, 2103, at Orange County, California.

SUB-LICENSOR

GRENADE BEVERAGE, LLC



By _____

SUB-LICENSEE

GRUMPY BEVERAGE, LLC



By _____