**DAVID B. JONELIS (BAR NO. 265235)**
djonelis@lavelysinger.com
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California  90067-2906
Telephone:  (310) 556-3501
Facsimile:  (310) 556-3615

Attorneys for Plaintiff and Counterdefendant
GRUMPY CAT LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| GRUMPY CAT LIMITED, an Ohio Limited Liability Entity,<br><br>     Plaintiff,<br><br>  vs.<br><br>GRENADE BEVERAGE LLC, a California Limited Liability Company; PAUL SANDFORD, an individual; NICK SANDFORD, an individual; and DOES 1-50,<br><br>     Defendants. | Case No:  8:15-cv-02063-DOC-DFM<br><br>**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)** |
| PAUL SANDFORD, an individual; NICK SANDFORD, an individual; and GRUMPY BEVERAGE, LLC, a Texas Limited Liability Company,<br><br>     Counterclaimants,<br><br>  vs.<br><br>GRUMPY CAT LIMITED, an Ohio Limited Liability Entity; and ROES 1-5,<br><br>     Counterdefendants. | Case filed:   December 11, 2015<br>FPTC:          December 18, 2017<br>               8:30am<br>Trial date:    January 16, 2018<br>Judge:         Hon. David O. Carter |

1  Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS
2  ORDERED:

3  1.   The Parties are (1) Plaintiff and Counter-Defendant GRUMPY CAT
4  LIMITED, (2) Defendant (in default) GRENADE BEVERAGE LLC, (3) Defendant
5  and Counterclaimant PAUL SANDFORD, (4) Defendant and Counterclaimant NICK
6  SANDFORD, and (5) Intervening Defendant and Counterclaimant GRUMPY
7  BEVERAGE, LLC.  All other parties named in the pleadings and not identified in the
8  preceding paragraph are now dismissed.

9  *[There is a dispute between the parties regarding the implications of Grumpy*
10 *Beverage, LLC's intervention and its potential liability herein on Plaintiff's*
11 *Complaint.  The parties' respective positions are set forth below in <u>Attachment "1"</u>].*

12 The parties agree that each of the parties to the action has been served with the
13 exception of Intervening Defendant and Counterclaimant GRUMPY BEVERAGE,
14 LLC.

15 *[There is a dispute between the parties regarding the implications of the fact*
16 *that Grumpy Beverage, LLC was not served with Plaintiff's Complaint.  The parties'*
17 *respective positions are set forth below in <u>Attachment "2"</u>].*

18 2.   Federal jurisdiction and venue are undisputed and invoked upon the
19 grounds that (a) this Court has exclusive federal question jurisdiction over this matter
20 pursuant to 28 U.S.C. §§ 1331 and 1338, (b) this Court has supplemental jurisdiction
21 over the parties' claims arising under the laws of California pursuant to 28 U.S.C. §
22 1367(a) because those claims are so related to the parties' claims under federal law that
23 they form part of the same case or controversy and derive from a common nucleus of
24 operative fact, and (3) venue is proper in this District pursuant to 28 U.S.C. §§ 1391
25 (b)(2)-(c) because the defendants are each subject to personal jurisdiction in this District
26 and because a substantial part of the events, acts and/or omissions giving rise to the
27 claims herein occurred in this District.

28 3.   The trial is estimated to take 4 trial days.

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

4.     The trial is to be a jury trial, although Plaintiff's accounting and cybersquatting causes of action and Defendants' counterclaims for declaratory relief should be bifurcated and adjudicated by the Court after the jury has rendered its verdict. At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

5.     The following facts are admitted and require no proof:

- Plaintiff entered into a license agreement with Defendant Grenade Beverage, LLC dated May 31, 2013;
- Plaintiff sent a letter to Grenade Beverage on December 11, 2015 stating that Plaintiff was terminating the May 31, 2013 license agreement.

6.     The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

7.     The parties plan to pursue the following claims against the following parties:

**<u>Plaintiff:</u>**

(a)     Plaintiff plans to pursue the following claims against the following defendants:

Claim 1:     Defendants Grenade Beverage, LLC, Paul Sandford, Nick Sandford, and Grumpy Beverage, LLC infringed Plaintiff's copyrights (17 U.S.C. § 101 *et seq*.);

Claim 2:     Defendants Grenade Beverage, LLC, Paul Sandford, Nick Sandford, and Grumpy Beverage, LLC infringed Plaintiff's federally registered trademarks (15 U.S.C. § 1114);

Claim 3:     Defendants Grenade Beverage, LLC, Paul Sandford, Nick Sandford, and Grumpy Beverage, LLC infringed Plaintiff's common law and registered trademarks through false designation of origin (15 U.S.C. § 1125(a));

2

| | | |
|---|---|---|
| 1 | Claim 4: | Defendants Grenade Beverage, LLC, Paul Sandford, Nick |
| 2 | | Sandford, and Grumpy Beverage, LLC diluted Plaintiff's |
| 3 | | common law and registered trademarks (15 U.S.C. § |
| 4 | | 1125(c)); |
| 5 | Claim 5: | Defendants Paul Sandford and Grumpy Beverage, LLC |
| 6 | | committed cybersquatting in connection with the |
| 7 | | www.grumpycat.com domain (15 U.S.C. 1125(d))[1]; |
| 8 | Claim 6: | Defendants Grenade Beverage, LLC and Grumpy Beverage, |
| 9 | | LLC breached their contract with Plaintiff; and |
| 10 | Claim 7: | Plaintiff seeks an accounting of moneys owed by Defendants |
| 11 | | Grenade Beverage, LLC, Paul Sandford, Nick Sandford, and |
| 12 | | Grumpy Beverage, LLC under (where applicable): (a) the |
| 13 | | Copyright Act, (b) the Lanham Act, and (3) the subject |
| 14 | | license agreement. |

15    Plaintiff also plans to pursue the following affirmative defenses in response to
16  Defendants' counterclaims:

| | | |
|---|---|---|
| 17 | Affirmative Defense 1: | Defendants cannot recover on their |
| 18 | | counterclaims on account of their own unclean |
| 19 | | hands |
| 20 | Affirmative Defense 2: | Defendants cannot recover any damages that |
| 21 | | could have been reasonably mitigated. |
| 22 | Affirmative Defense 3: | Defendants cannot recover on their |
| 23 | | counterclaims because Defendants would be |
| 24 | | unjustly enriched by any such recovery |

25

26  [1] Although Plaintiff's cybersquatting claim against Grumpy Beverage was initially
    asserted as a counterclaim-in-reply after Grumpy Beverage intervened in this action,
27  Plaintiff respectfully requests that, in the interest of efficiency, the Court treat the
    cybersquatting allegations against Paul Sandford and Grumpy Beverage as a single
28  claim.

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

(b)    The elements required to establish Plaintiff's claims and affirmative defenses are:

Claim 1:    Copyright Infringement.

Plaintiff has the burden of proving:

(1)    Plaintiff is the owner of a valid copyright; and

(2)    Defendants copied original expression from the copyrighted work.

*See* Ninth Circuit Manual of Model Jury Instructions: Civil § 17.5 (2017).

Claims 2 and 3:    Trademark Infringement (15 U.S.C. § 1114; 15 U.S.C. § 1125(a))

Plaintiff has the burden of proving:

(1)    Plaintiff's subject registered and common law trademarks are valid, protectable trademarks;

(2)    Plaintiff owns the subject trademarks; and

(3)    Defendants used Plaintiff's subject trademarks and/or marks similar to Plaintiff's subject trademarks without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See* Ninth Circuit Manual of Model Jury Instructions: Civil § 15.6 (2017); *Phillip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1072 (C.D.Cal.2004) (the essential elements of claims for trademark infringement and false designation of origin are identical); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir. 1999) (holding the same legal standard applies to sections 32(1) and 43(a) of the Lanham Act); *Thane Int'l., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 n.3 (9th

4

Cir. 2002) (same standard applied for common law trademark infringement as 15 U.S.C. § 1114 federal trademark infringement).

Claim 4:    Trademark Dilution (15 U.S.C. § 1125(c))

Plaintiff has the burden of proving:

(1)    Plaintiff's subject registered and common law trademarks are famous and distinctive;

(2)    Defendants made use of the subject trademarks in commerce;

(3)    Defendants' use began after the subject trademarks became famous; and

(4)    Defendants' use of the subject trademarks is likely to cause dilution by blurring or dilution by tarnishment.

*See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).

Claim 5:    Cybersquatting (15 U.S.C. 1125(d))

Plaintiff has the burden of proving:

(1)    Defendants registered, trafficked in, or used a domain name;

(2)    the domain name is identical or confusingly similar to the subject protected mark(s) owned by the Plaintiff; and

(3)    Defendants acted with bad faith intent to profit from the mark(s).

*See* Ninth Circuit Manual of Model Jury Instructions: Civil § 15.31 (2017); *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010).

Claim 6:    Breach of Contract

Plaintiff has the burden of proving:

(1)    The parties entered into a contract;

(2)    Plaintiff did all, or substantially all, of the significant things that the contract required it to do;

5

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**      K:\5875-2\PLE

(3)    Defendant failed to do something that the contract required it to do;

(4)    Plaintiff was harmed;

(5)    Defendant's breach of contract was a substantial factor in causing Plaintiff's harm.

California Civil Jury Instructions (CACI) § 303 (2017).

Claim 7:    Accounting

Plaintiff has the burden of proving:

(1)    A relationship exists between Plaintiff and Defendants that requires an accounting; and

(2)    Some balance is due the plaintiff that can only be ascertained by an accounting.

*Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013).

Affirmative Defense 1:    Unclean Hands.

Plaintiff has the burden of proving:

(1)    Inequitable conduct by Defendants;

(2)    Defendants' conduct directly relates to the claims which they have asserted against Plaintiff; and

(3)    Defendants' conduct injured Plaintiff.

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1223 (C.D. Cal. 2007).

Affirmative Defense 2:    Failure to Mitigate.

Plaintiff has the burden of proving:

(1)    Defendants failed to use reasonable efforts to mitigate their damages; and

(2)    The amount by which damages would have been mitigated.

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

1      Ninth Circuit Manual of Model Jury Instructions: Civil § 5.3

2      (2017).

3      <u>Affirmative Defense 3:   Unjust enrichment.</u>

4      Plaintiff has the burden of proving:

5           (1)    Defendants' receipt of a benefit and unjust retention of the

6               benefit at Plaintiff's expense.

7      *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

8    (c)    In brief, the key evidence Plaintiff relies on for each of its claims and

9      affirmative defenses is:

10      <u>Claim 1:    Copyright Infringement</u>

11      ***ELEMENT 1:***

12      •  Plaintiff is the sole and exclusive owner of the copyrights in and to

13         certain photographs and an illustration of Grumpy Cat, which are

14         protected by U.S. Copyright Reg. Nos. VA0001849042,

15         VA0001849043, VA0001849044, and VA0001901628 (the

16         "Grumpy Cat Copyrights"), issued by the United States Copyright

17         Office on December 4, 2012 and December 18, 2013.

18      •  With respect to any derivative works were created by Defendants

19         (*e.g.* in connection with the labeling of the subject iced coffee

20         and/or ground coffee products), the copyrights in those works

21         would similarly be owned by Plaintiff under Section 4(b) of the

22         subject license agreement, which states: "All Works created

23         hereunder by Licensee or any of its agents and/or employees

24         embodying the Licensed Properties, including any adaptations

25         thereof or derivations therefrom (which shall at all times be made

26         solely with the prior written consent of Licensor) and the right to

27         copyright and/or trademark therein, shall from the inception of its

28         creation, be the sole and exclusive property of Licensor throughout

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

the Territory in perpetuity within the meaning of the Copyright and Trademark Laws throughout the world, free of any claim whatsoever by Licensee or by any persons deriving any rights or interests therefrom."

**ELEMENT 2:**

- The subject license agreement itself evidences that Defendants were only provided a limited license to use Plaintiff's copyrights in connection with a line of iced coffee products. To the extent that Defendants sought to use Plaintiff's copyrights in connection with other lines of products (e.g. a line of ground coffee products), Plaintiff had the unfettered discretion to approve or disapprove such use.

- There is substantial evidence showing how Defendants were repeatedly told by Plaintiff's representatives (both in writing and verbally) that Plaintiff's copyrights could *not* be used in connection with a line of ground coffee products, including on the following occasions:

  - By email exchange on October 21, 2015, in which Paul Sandford was told: "Approval is still required. ***Hold off until you hear back from us.***"

  - Verbally, during a November 2, 2015 conference call between Paul Sandford, on the one hand, and Plaintiff's transactional counsel and brand manager, on the other hand.

  - By email exchange on November 2, 2015, in which Paul Sandford was told: "***Per our conversation of today, our client does not approve this. Do not proceed.***"

  - By email exchange on November 24, 2015, in which Paul Sandford was told "***You are not authorized to proceed with the***

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

*ground coffee product, and your posting of these products for sale will constitute a clear breach of the subject licensing agreement…Do NOT proceed with the posting of the ground coffee products*."

- By email exchange on November 24, 2015, in which Paul Sandford was told: "*You are not authorized to proceed with a "Grumpy Line" line of ground coffee products.*"

- There are numerous emails in which, despite Plaintiff's clear non-approval of a ground coffee product, Defendants nevertheless admitted to distributing and reproducing Plaintiff's copyrights on ground coffee products.

- There is also evidence showing how Defendants had already began reproducing and distributing Plaintiff's copyrights on ground coffee products before even asking for Plaintiff's approval.

- Plaintiff will also introduce samples of the actual infringing ground coffee products themselves that were sold and distributed despite Plaintiff's non-approval.

Claims 2 and 3:    Trademark Infringement (15 U.S.C. § 1114; 15 U.S.C. § 1125(a))

**ELEMENT 1:**

- Plaintiff is the sole and exclusive owner of all federal and common law rights in and to the word mark "GRUMPY CAT" as used and registered in, *inter alia*, International Class 030 (Coffee and tea) (protected by U. S. Trademark Reg. No. 4,527,097 issued by the United States Patent and Trademark Office (the "USPTO") on May 6, 2014), and International Classes 021 (Coffee and Tea cups/mugs) and 041 (website services) (protected by U. S. Trademark Reg. No. 4,417, 549 issued by the USPTO on October 15, 2013).

9

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

- Plaintiff is the sole and exclusive owner of all federal and common law rights in and to the image mark , as used and registered in, *inter alia*, International Class 021 (Coffee and Tea cups/mugs) (protected by U. S. Trademark Reg. Nos. 4,820,434, issued by the the USPTO on September 29, 2015).

- With respect to any adaptive or derivative works that were created by Defendants (e.g. in connection with the labeling of the subject iced coffee and/or ground coffee products), the trademarks pertaining to those works would similarly be owned by Plaintiff under Section 4(b) of the subject License Agreement, which states: "All Works created hereunder by Licensee or any of its agents and/or employees embodying the Licensed Properties, including any adaptations thereof or derivations therefrom (which shall at all times be made solely with the prior written consent of Licensor) and the right to copyright and/or trademark therein, shall from the inception of its creation, be the sole and exclusive property of Licensor throughout the Territory in perpetuity within the meaning of the Copyright and Trademark Laws throughout the world, free of any claim whatsoever by Licensee or by any persons deriving any rights or interests therefrom."

*ELEMENT 3:*

- The subject license agreement itself evidences that Defendants were only provided a limited license to use Plaintiff's trademarks in connection with a line of iced coffee products.  To the extent that Defendants sought to use Plaintiff's trademarks in connection with other lines of products (e.g. a line of ground coffee products), Plaintiff had the unfettered discretion to approve or disapprove such use.

10

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

- There is substantial evidence showing how Defendants were repeatedly told by Plaintiff's representatives (both in writing and verbally) that Plaintiff's trademarks could *not* be used in connection with a line of ground coffee products, including on the following occasions:
  - By email exchange on October 21, 2015, in which Paul Sandford was told: "Approval is still required. ***Hold off until you hear back from us.***"
  - Verbally, during a November 2, 2015 conference call between Paul Sandford, on the one hand, and Plaintiff's transactional counsel and brand manager, on the other hand.
  - By email exchange on November 2, 2015, in which Paul Sandford was told: "***Per our conversation of today, our client does not approve this.  Do not proceed.***"
  - By email exchange on November 24, 2015, in which Paul Sandford was told "***You are not authorized to proceed with the ground coffee product, and your posting of these products for sale will constitute a clear breach of the subject licensing agreement…Do NOT proceed with the posting of the ground coffee products***."
  - By email exchange on November 24, 2015, in which Paul Sandford was told: "***You are not authorized to proceed with a "Grumpy Line" line of ground coffee products.***"
- There are numerous emails in which, despite Plaintiff's clear non-approval of a ground coffee product, Defendants nevertheless admitted to using Plaintiff's trademarks on ground coffee products.

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

- There is also evidence showing how Defendants had already began using Plaintiff's trademarks on ground coffee products before even asking for Plaintiff's approval.

- Plaintiff will also introduce samples of the actual infringing ground coffee products themselves that were sold and distributed despite Plaintiff's non-approval.

Claim 4:     Trademark Dilution (15 U.S.C. § 1125(c))

**ELEMENTS 1 AND 3:**

- It is an undisputed fact that the subject "GRUMPY CAT" marks are famous and distinctive and that Defendants' began using the marks on ground coffee products after the marks had already become famous.

- It is also undisputed that Plaintiff is the sole and exclusive owner of all federal and common law rights in and to the image mark , as used and registered in, *inter alia*, International Class 021 (Coffee and Tea cups/mugs) (protected by U. S. Trademark Reg. Nos. 4,820,434, issued by the the USPTO on September 29, 2015).

**ELEMENT 2:**

- There are numerous emails in which, despite Plaintiff's clear non-approval of a ground coffee product, Defendants nevertheless admitted to using Plaintiff's trademarks on ground coffee products.

- There is also evidence showing how Defendants had already began using Plaintiff's trademarks on ground coffee products before even asking for Plaintiff's approval.

- Plaintiff will also introduce samples of the actual infringing ground coffee products themselves that were sold and distributed despite Plaintiff's non-approval.

**ELEMENT 4:**

12

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**       K:\5875-2\PLE

- Plaintiff will offer testimony from its representatives proving that Defendants' unauthorized use of Plaintiff's trademarks tarnished the reputation of those marks in the consumer marketplace.

Claim 5:    Cybersquatting (15 U.S.C. 1125(d))

*ELEMENT 1:*

- The current WHOIS listing for [www.GrumpyCat.com](www.GrumpyCat.com) proves that it is registered to both Paul Sandford and Grumpy Beverage.

*ELEMENT 2:*

- Plaintiff is the sole and exclusive owner of all federal and common law rights in and to the word mark "GRUMPY CAT" as used and registered in, *inter alia*, International Class 030 (Coffee and tea) (protected by U. S. Trademark Reg. No. 4,527,097 issued by the United States Patent and Trademark Office (the "USPTO") on May 6, 2014), and International Classes 021 (Coffee and Tea cups/mugs) and 041 (website services) (protected by U. S. Trademark Reg. No. 4,417, 549 issued by the USPTO on October 15, 2013).

- With respect to any derivative or adaptive works that were created by Defendants (*e.g.* in connection with the labeling of the subject iced coffee and/or ground coffee products), the trademarks pertaining to those works would similarly be owned by Plaintiff under Section 4(b) of the subject License Agreement, which states: "All Works created hereunder by Licensee or any of its agents and/or employees embodying the Licensed Properties, including any adaptations thereof or derivations therefrom (which shall at all times be made solely with the prior written consent of Licensor) and the right to copyright and/or trademark therein, shall from the inception of its creation, be the sole and exclusive property of Licensor throughout the Territory in perpetuity within the meaning

13

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

of the Copyright and Trademark Laws throughout the world, free of any claim whatsoever by Licensee or by any persons deriving any rights or interests therefrom."

- The domain name itself, www.GrumpyCat.com, is identical to Plaintiff's protected marks.

    *ELEMENT 3:*

- Emails and other documents will demonstrate that Paul Sandford and Grumpy Beverage, LLC entered into an agreement to obtain the domain www.GrumpyCat.com from a third party without Plaintiff's permission.

- Testimony (and corresponding exhibits) will further prove that Paul Sandford and Grumpy Beverage used the unauthorized acquisition of www.GrumpyCat.com as leverage to try to renegotiate the subject license agreement so that it would apply to ground coffee products.

Claim 6:    Breach of Contract

    *ELEMENT 1:*

- It is undisputed that (1) there is a valid license agreement between Plaintiff and Grenade Beverage, and (2) Grumpy Beverage entered into a sublicense agreement with Grenade that required Grumpy Beverage to comply with the duties and obligations in the license agreement

    *ELEMENT 2:*

- Plaintiff will provide extensive testimony and corresponding exhibits which prove that Plaintiff performed (and actually went well beyond) its limited obligations under the license agreement.

    - First and foremost, Plaintiff performed by allowing Grumpy Beverage to use the licensed copyrights and trademarks in

14

connection with a line of iced coffee products.  The testimony (and corresponding exhibits) will show that this allowance was the primary reason why Grenade and Grumpy Beverage had paid the $150,000 license fee to Plaintiff.

- Moreover, while the face of the license agreement itself demonstrates that it imposes no affirmative promotional obligations on Plaintiff, there are more than 50 pages of documents evidencing the substantial social media promotional efforts that Plaintiff gave to the iced coffee product, including even after Defendants had breached the license agreement.

- Plaintiff will also present testimony and corresponding video footage evidencing how it further promoted the iced coffee product in the news media, including on the "Fox and Friends" national television program.

- To the extent that Plaintiff was required to give notice of default and an opportunity to cure before terminating the license agreement (such notice was not, however, required in order to merely assert a breach claim against Grumpy Beverage), Plaintiff repeatedly provided this notice to Grumpy Beverage, including without limitation on October 22, 2015 and December 9, 2015.  Any further notice would have been futile.

*ELEMENT 3:*

- As was already introduced in opposition to Grumpy Beverage's motion for partial summary judgment, thee evidence will demonstrate how Grumpy Beverage repeatedly, and without justification, failed to properly and timely account to Plaintiff as required under the license agreement and sublicense agreement, including with respect to the payment of royalties.

15

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

- The evidence will further demonstrate how Grumpy Beverage used Plaintiff's trademarks and copyrights without Plaintiff's approval, as required under the license agreement and sublicense agreement.
- The evidence will further demonstrate that Grumpy Beverage, without Plaintiff's authorization or even knowledge, entered into an agreement to purchase the domain www.grumpycat.com – a domain which is comprised solely of Plaintiff's own GRUMPY CAT mark.

**ELEMENTS 4 AND 5:**

- The evidence, including (1) emails from Nick Sandford and Paul Sandford, (2) Paul Sandford's own deposition testimony, and (3) Defendants' self-serving purported "expert report" will demonstrate that Plaintiff's reasonable expectation when it entered into the subject license agreement was that it would make millions of dollars in royalties.  On account of Grumpy Beverage's failure to perform its obligations, Plaintiff has been deprived of this expected benefit of the bargain.
- Although Plaintiff will also request recovery of any and all monies either (1) due to Plaintiff based on sales made under the license agreement, or (2) unlawfully obtained by Grenade Beverage and/ro Grumpy Beverage based on their sale and exploitation of unauthorized products.  However, because Defendants are exclusively in control over the financial information necessary to ascertain the exact amounts owed to Plaintiff, an accounting is necessary to determine the amount of Plaintiff's damages in this respect.

Claim 7:      Accounting

16

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

- Plaintiff's entitlement to an accounting will only arise if it prevails on one or more of its other causes of action. However, assuming it does, the evidence will show that Plaintiff has never been provided with a full and complete accounting of Defendants' books and records, and therefore an accounting is necessary in order to determine what, if any, balance is due to Plaintiff.

Affirmative Defense 1:    Unclean Hands

- The evidence supporting this affirmative defense is the same evidence of Defendants' wrongdoing supporting Plaintiff's prima facie claims.

Affirmative Defense 2:    Failure to Mitigate

- The evidence will show how Defendants had already began using Plaintiff's copyrights and trademarks on ground coffee products before even asking for Plaintiff's approval. Thus, to the extent that Defendants incurred any costs or expenses in connection with the creation and/or promotion of this unapproved product, such expenditures could (and should) reasonably have been mitigated.

Affirmative Defense 3:    Unjust Enrichment

- The substantial evidence supporting Plaintiff's prima facie claims against Defendants will prove that any recovery by Defendants in this action would cause Defendants to be unjustly enriched by their own misconduct.

**Defendants:**

(a)    Defendants plan to pursue the following claims against the Plaintiff:

Claims 1-3:  Grumpy Beverage, LLC seeks a declaration from the Court that it has an ownership interest in the intellectual property rights that it created during the performance of the contract  -

17

e.g., Trademark (Claim 1), Copyright (Claim 2) and Domain Names (Claim 3);

Claims 4-5:   Grumpy Beverage, LLC seeks a declaration from the Court that it did not infringe any intellectual property right of Grumpy Cat Ltd. – e.g., Trademark (Claim 4) and Copyright (Claim 5);

Claim 6:   Intentional Misrepresentation: Grumpy Beverage, LLC v. Grumpy Cat Ltd.;

Claim 7:   Negligent Misrepresentation: Grumpy Beverage, LLC v. Grumpy Cat Ltd.;

Claim 8:   Breach Of Fiduciary Duty: Grumpy Beverage, LLC v. Grumpy Cat Ltd.;

Claim 9:   Breach Of Contract: Grumpy Beverage, LLC v. Grumpy Cat Ltd.;

Claim 10:   Breach Of The Covenant Of Good Faith And Fair Dealing: Grumpy Beverage, LLC v. Grumpy Cat Ltd.; and

Claim 11:   Intentional Interference With Contractual Relations: Grumpy Beverage, LLC v. Grumpy Cat Ltd.; and

Claim 12:   Intentional Interference With Prospective Economic Advantage: Grumpy Beverage, LLC v. Grumpy Cat Ltd..

Defendants also plan to pursue the following affirmative defenses in response to Plaintiff's claims:

Affirmative Defenses

3, 4, 5, 7, 8 and 9:   Many of the affirmative defenses asserted by Defendant are attributable to the fact that Plaintiff intentionally omitted the one party who actually undertook any activity in these

18

1                  proceedings, namely, Intervening Defendant

2                  Grumpy Beverage LLC.   Intervening Defendant

3                  and Counterclaimant Grumpy Beverage, LLC

4                  therefore assert that the entire broad range of

5                  affirmative defenses potentially apply in this

6                  case should Plaintiff seek to use the actions of

7                  Intervening Defendant Grumpy Beverage, LLC

8                  as evidence in these proceedings.

9      Affirmative Defense 6:    Plaintiff cannot recover any damages because of

10                  unclean hands.

11      Affirmative Defense 7:    Acquiescence Defendants cannot recover on

12                  their counterclaims because Defendants would

13                  be unjustly enriched by any such recovery

14      Affirmative Defense 8:    Estoppel Defendants cannot recover on their

15                  counterclaims because Defendants would be

16                  unjustly enriched by any such recovery

17      Affirmative Defense 9:    Waiver and Release Defendants cannot recover

18                  on their counterclaims because Defendants

19                  would be unjustly enriched by any such

20                  recovery

21      Affirmative Defense 18:   Plaintiff cannot recover any damages that could

22                  have been reasonably mitigated.

23

24    (b)     The elements required to establish Counterclaimant's claims and

25         affirmative defenses, as well as the brief description of evidence for same,

26         are as follows:

27

28

19

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

**Counterclaims 1-3 (Declaratory Judgment For Ownership Of Trademark, Copyright and Domain Name) and 4-5 (Declaratory Judgment For Non-Infringement of Trademark and Copyright)**

(Paul Sandford, Nick Sandford and Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- Counterclaimants seek a declaration from the Court that Counterclaimant Grumpy Beverage, LLC is the "Company" under the license agreement. While the license agreement states who shall own intellectual property as between Licensor and Licensee, it is silent as to "Company." Counterclaimants assert that the parties intended to create a coffee brand with independent value that could be sold separate and apart from the license agreement.  Accordingly, the parties anticipated that ownership as between Licensor and Company would belong to Company; thus, Company owns all intellectual properties (trademark, copyright and domain name) that were created by Company.  Counterclaimants are not entitled to a jury trial on these issues and the Court should decide these as a matter of law. *Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 400 F. Supp. 2d 1273, 1275-1276 (D. Kan. 2005) (Absent a damage claim "the right to a jury trial is not triggered in a trademark case in which the plaintiff seeks only equitable relief such as an injunction and/or a declaratory judgment.")(*Citing Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 1976 U.S. Dist. LEXIS 12741, Case No. C 74-0529, 1976 WL 20999 (N.D. Cal. Oct. 15, 1976), among others).

- Evidence shall consist of the license agreement, testimony and email of the witnesses as to the intent for Company to own the intellectual property rights.  Even if the contract were interpreted such that ownership is properly within Plaintiff, then Defendant's activities were consistent with the license agreement and are therefore non-infringing.

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**     K:\5875-2\PLE

## **Counterclaim 6: Intentional Misrepresentation**

### (Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- Counterdefendant represented to Counterclaimants that a fact was true;
- Counterdefendant's representation was false;
- Counterdefendant knew that the representation was false when Counterdefendant made it, or that Counterdefendant made the representation recklessly and without regard for its truth;
- Counterdefendant intended that Counterclaimants rely on the representation;
- Counterclaimants reasonably relied on Counterdefendant's representation;
- Counterclaimants was harmed; and
- Counterclaimants' reliance on Counterdefendant's representation was a substantial factor in causing Counterclaimants' harm.
- *See CACI 1900.*
- Evidence shall consist of consist of the license agreement, testimony text messages and emails of the witnesses as to the representations and omissions of Plaintiff relating to the near term release of a feature film for Grumpy Cat and Plaintiff's ability to reach millions of social media subscribers (which could not be done without "boosting" as significant additional costs) prior to the formation of a contract.

## **Counterclaim 7: Negligent Misrepresentation**

### (Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- Counterdefendant represented to Counterclaimants that a fact was true;
- Counterdefendant's representation was not true;
- Although Counterdefendant may have honestly believed that the representation was true, Counterdefendant had no reasonable grounds for believing the representation was true when Counterdefendant made it;

21

- Counterdefendant intended that Counterclaimants rely on this representation;
- Counterclaimants reasonably relied on Counterdefendant's representation;
- Counterclaimants were harmed; and
- Counterclaimants' reliance on Counterdefendant's representation was a substantial factor in causing Counterclaimants' harm.
- *See CACI 1903.*
- Evidence shall consist of consist of the license agreement, testimony text messages and emails of the witnesses as to the representations and omissions of Plaintiff relating to the near term release of a feature film for Grumpy Cat and Plaintiff's ability to reach millions of social media subscribers (which could not be done without "boosting" as significant additional costs) prior to the formation of a contract.

### **Counterclaim 8: Breach Of Fiduciary Duty**

(Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- Counterdefendant was Counterclaimants' officer/partner;
- Counterdefendant knowingly acted against Counterclaimants' interests in connection with the performance of the license agreement;
- Counterclaimants did not give informed consent to Counterdefendant's conduct;
- Counterclaimants were harmed; and
- Counterdefendant's conduct was a substantial factor in causing Counterclaimant's harm.
- *See CACI 4102.*
- Evidence shall consist of the agreement, testimony and email from witnesses demonstrating Plaintiff's failure to participate in the limited liability company of Intervening Defendant Grumpy Beverage LLC,

22

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

Plaintiff's failure to approve products against the interests of the company
and resulting in financial harm.

### Counterclaim 9: Breach Of Contract

(Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- That plaintiff and defendant entered into a contract;
- That Counterclaimants did all, or substantially all of the significant things
  that the contract required them to do or that they were excused from
  having to do those things;
- That all conditions required for Counterclaimants' performance had
  occurred or were excused;
- That Counterclaimants' were harmed by Counterdefendant's conduct.
- *See CACI 300.*
- Evidence shall consist of the agreement, testimony and email from
  witnesses.

### Counterclaim 10: Breach Of The Covenant Of
### Good Faith And Fair Dealing

(Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- That plaintiff and defendant entered into a contract;
- That Counterclaimants did all, or substantially all of the significant things
  that the contract required them to do or that they were excused from
  having to do those things;
- That all conditions required for Counterclaimants' performance had
  occurred or were excused;
- That Counterdefendant unfairly interfered with Counterclaimants' right to
  receive the benefits of the contract; and
- That Counterclaimants' were harmed by Counterdefendant's conduct.

23

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**    K:\5875-2\PLE

- *See CACI 325.*
- Evidence shall consist of the agreement, testimony and email from witnesses demonstrating Plaintiff's failure to participate in the limited liability company of Intervening Defendant Grumpy Beverage LLC, Plaintiff's failure to approve products against the interests of the company and resulting in financial harm.

**Counterclaim 11: Intentional Interference With Contractual Relations**

(Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- That there was a contract between Intervening Defendant Grumpy Beverage LLC and customers;
- That Plaintiff knew of the contract(s);
- That Plaintiff's conduct prevented performance or made performance more expensive or difficult;
- That Plaintiff intended to disrupt the performance of the contract(s)/ or knew that disruption of performance was certain or substantially certain to occur;
- That Intervening Defendant Grumpy Beverage LLC was harmed; and
- That Plaintiff's conduct was a substantial factor in causing Intervening Defendant Grumpy Beverage LLC harm.
- *See CACI 2201.*
- Evidence shall consist of the agreement, testimony and email from witnesses demonstrating Plaintiff's refusal to approve products against the interests of the company and knowing that buyers and prospective buyers would not be able to purchase the product thereby resulting in financial harm.

**Counterclaim 12: Intentional Interference**

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

### **With Prospective Economic Advantage**

(Grumpy Beverage, LLC v. Grumpy Cat Ltd.)

- That plaintiff and 1) plaintiffs' customers and 2) Larry Thornton were in an economic relationship that probably would have resulted in an economic benefit to plaintiff;
- That defendant knew of the relationship;
- That defendant engaged in acts of unfair competition and misappropriation of trade secret;
- That by engaging in this conduct, defendant intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur;
- That the relationship was disrupted;
- That plaintiff was harmed; and
- That defendants' conduct was a substantial factor in causing plaintiffs' harm.
- *See CACI 2202.*
- Evidence shall consist of the agreement, testimony and email from witnesses demonstrating Plaintiff's refusal to approve products against the interests of the company and knowing that buyers and prospective buyers would not be able to purchase the product thereby resulting in financial harm.

### **Affirmative Defenses 3 (Standing), 4 (Failure to Join an Indispensable Party), 5 (Laches), 7 (Estoppel), 8 (Acquiescence), and 9 (Waiver).**

- Many of the affirmative defenses asserted by Defendant are attributable to the fact that Plaintiff intentionally omitted the one party who actually undertook any activity in these proceedings, namely, Intervening

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

Defendant Grumpy Beverage LLC.   Intervening Defendant and Counterclaimant Grumpy Beverage, LLC therefore assert that the entire broad range of affirmative defenses potentially apply in this case should Plaintiff seek to use the actions of Intervening Defendant Grumpy Beverage, LLC as evidence in these proceedings, including, without limitation, Standing (3), Failure to Join an Indispensable Party (4), Laches (5), Estoppel (7), Acquiescence (8), and Waiver (9).

### Affirmative Defense 6: Unclean Hands

- Defendant must prove the following by a preponderance of the evidence:
- Plaintiff's conduct was unconscionable;
- the conduct relates to the subject matter of Plaintiff's claims; and
- the conduct resulted in prejudice to the Defendants.
- *Brother Records v. Jardine, 318 F.3d 900 (9th Cir. 2003); Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1313 (9th Cir. 1997); Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987); Unilogic, Inc. v. Burroughs Corp (1992) 10 Cal.App.4th 612, 618-623, 12 Cal.Rptr.2d 741; Soon v. Beckman (1965) 234 Cal.App.2d 33, 36, 44 Cal.Rptr. 190; Fibreboard Paper Products Corp. v. East Bay Union of Machinists (1964) 227 Cal.App.2d 675, 728, 39 Cal.Rptr. 64.*
- Consistent with the evidence relating to intentional and negligent misrepresentation, counterclaimants will show that plaintiff's conduct was unconscionable.

### Affirmative Defense 7: Acquiescence

- A party has full knowledge or sufficient notice of its rights and of all the material facts, freely does what amounts to a recognition or adoption of a contract as existing, or acts in a manner inconsistent with its repudiation,

26

and so as to affect or interfere with the relations and situation of the
parties, that party acquiesces in and assents to it.

- Plaintiffs have the burden of proving, by a preponderance of the evidence,
  that Defendants acquiesced to Plaintiffs' continued activities in Temecula.
  If you conclude that Clockwork acquiesced to Donaldson doing so, then
  you must find for Donaldson. *Inxight Software, Inc. v. Verity, Inc.*, No. C
  05-01660 SC, 2006 WL 732550, (N.D. Cal. Feb. 13, 2006) (*citing Bisbing
  v. Sterling Precision Corp.*, 34 A.D.2d 427, 430–31 (N.Y. App. Div.
  1970).

## Affirmative Defense 8: Estoppel

- Counterclaimant was apprised of the facts;
- Counterclaimant intended his conduct to be acted upon or he acted in such
  a way that Counterdefendant reasonably could believe that
  Counterclaimant intended his conduct to be acted upon;
- Counterdefendant was ignorant of the actual facts; and
- Counterdefendant relied upon the conduct to Counterdefendant's injury –
  or – that plaintiff has by his conduct or declarations misled
  Counterdefendant to Counterdefendant prejudice. *Adams v. Johns-
  Manville Corp.*, 876 F.2d 702 (9th Cir. 1989); *see also Youngman v.
  Nevada Irr. Dist.*, 449 P.2d 462 (Cal. 1969)

## Affirmative Defense 9: Waiver And Release

- A party may waive or release a right by: 1) intentionally relinquishing the
  rights; or 2) engaging in conduct so inconsistent with an intent to enforce
  the right as to induce a reasonable belief that such right has been

27

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

relinquished. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991).

- Counterclaimants must prove both of the following by clear and convincing evidence: 1) That Counterdefendant knew Counterclaimants were required to perform; and 2) That Counterdefendant freely and knowingly gave up Counterdefendant's right to have Counterclaimants perform the obligation(s).
- A waiver may be oral or written or may arise from conduct that shows that Counterdefendant gave up that right.
- If Counterclaimants prove that Counterdefendants gave up Counterdefendant's right to Counterclaimants performance, then Counterclaimants were not required to perform the obligation(s).
- *See CACI 336.*
- Evidence in the form of testimony witnesses, emails and financial documents will show that Defendants not only cured any alleged breaches, but that Plaintiff failed to take action thereby supporting defenses 7-9.

### Affirmative Defense 18: Failure To Mitigate

- If Counterdefendants breached the contract and the breach caused harm, Counterclaimants are not entitled to recover damages for harm that Counterdefendants proves Counterclaimants could have avoided with reasonable efforts or expenditures. Consideration should be given to the reasonableness of Counterclaimants efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.
- If Counterclaimants made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

28

- *See CACI 358*

8.      In view of the admitted facts and the elements required to establish the claims, counterclaims, and affirmative defenses, the following issues remained to be tried[2]:

      a.   Did the May 31, 2013 agreement between Plaintiff and Grenade Beverage, LLC (the "Agreement") pre-approve the sale of ground coffee products?

      b.   Did Plaintiff substantially perform all of its material obligations under the Agreement?

      c.   If Plaintiff did not substantially perform all of its material obligations under the Agreement, was performance excused or waived?

      d.   If Plaintiff did not substantially perform all of its material obligations under the Agreement, and if performance was not excused or waived, was Defendant Grumpy Beverage damaged by Plaintiff's lack of performance and in what amount?

      e.   Did Plaintiff do something that the Agreement prohibited it from doing?

      f.   If Plaintiff did something that the Agreement prohibited it from doing, was Defendant Grumpy Beverage damaged by Plaintiff's conduct and in what amount?

      g.   Is Defendant Grumpy Beverage an intended third party beneficiary under the Agreement?

      h.   Did Defendant Grumpy Beverage substantially perform all of its material obligations as a third party beneficiary and/or sublicensee under the Agreement?

---

[2] These issues do not include the issues that would be addressed by the Court in a post-trial motion for default judgment against defaulted defendant Grenade Beverage, LLC.

29

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**     K:\5875-2\PLE

i. If Defendant Grumpy Beverage did not substantially perform all of its material obligations as a third party beneficiary and/or sublicensee under the Agreement, was performance excused or waived?

j. If Defendant Grumpy Beverage did not substantially perform all of its material obligations as a third party beneficiary and/or sublicensee under the Agreement, and if performance was not excused or waived, was Plaintiff damaged by Defendant Grumpy Beverage's lack of performance and in what amount?

k. Did Defendant Grumpy Beverage do something that the Agreement prohibited it from doing?

l. If Defendant Grumpy Beverage did something that the Agreement prohibited it from doing, was Plaintiff damaged by Grumpy Beverage's conduct and in what amount?

m. What ownership interest, if any, does Grumpy Beverage, LLC have in any "Grumpy Cat" branded iced and/or coffee product(s) that were created prior to December 11, 2015?

n. Did Defendants Paul Sandford, Nick Sandford and/or Grumpy Beverage infringe Plaintiff's copyrights by advertising and selling a ground coffee product?

o. If Defendants Paul Sandford, Nick Sandford and/or Grumpy Beverage infringed Plaintiff's copyrights by advertising and selling a ground coffee product, what amount of damages should be awarded to Plaintiff?

p. Did Defendants Paul Sandford, Nick Sandford and/or Grumpy Beverage infringe Plaintiff's registered and/or common law trademarks by advertising and selling a ground coffee product?

q. If Defendants Paul Sandford, Nick Sandford and/or Grumpy Beverage infringed Plaintiff's registered and/or common law trademarks by

30

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

advertising and selling a ground coffee product, what amount of damages should be awarded to Plaintiff?

r. Did Defendants Paul Sandford, Nick Sandford and/or Grumpy Beverage dilute Plaintiff's registered and/or common law trademarks by advertising and selling a ground coffee product?

s. If Defendants Paul Sandford, Nick Sandford and/or Grumpy Beverage diluted Plaintiff's registered and/or common law trademarks by advertising and selling a ground coffee product, what amount of damages should be awarded to Plaintiff?

t. Did Plaintiff's representatives make any false statements of fact to Grumpy Beverage's representatives before entering into the License Agreement?

u. If Plaintiff's representatives made any false statements of fact to Grumpy Beverage's representatives before entering into the License Agreement, were Plaintiff's representatives aware that the statements were false?

v. If Plaintiff's representatives made any false statements of fact to Grumpy Beverage's representatives before entering into the License Agreement, did Plaintiff's representatives have any reasonable grounds for believing that the statements were true?

w. If Plaintiff's representatives made any false statements of fact to Grumpy Beverage's representatives before entering into the License Agreement, did Grumpy Beverage take any action in reliance on those statements?

x. If Grumpy Beverage took any action in reliance on Plaintiff's false statements of fact, did Grumpy Beverage incur any damages in connection with that reliance and in what amount?

31

y.  Did Plaintiff's representatives intentionally conceal any material facts from Grumpy Beverage's representatives before entering into the License Agreement?

z.  If Plaintiff's representatives intentionally concealed any material facts from Grumpy Beverage's representatives before entering into the License Agreement, did Grumpy Beverage take any action in reliance on that concealment?

aa. If Grumpy Beverage took any action in reliance on Plaintiff's concealment, did Grumpy Beverage incur any damages in connection with that reliance and in what amount?

bb. Did Plaintiff interfere with Grumpy Beverage's actual or prospective economic relationships and, if so, did Grumpy Beverage suffer damages and in what amount?

9.  All non-expert discovery is complete, and the parties will have completed all expert discovery by December 20, 2017.

10.  All disclosures under F.R.Civ.P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. The parties stipulate as to the admissibility of all exhibits that were included in the parties' respective initial disclosures, regardless of whether the exhibit is introduced at trial in bates-marked or native format.  The parties object to the following exhibits:

Plaintiff objects to Exhibit Nos. 611, 612, and 613.


The objections and grounds therefor are:

o  Exhibit 611:

▪  This document was not produced as part of any party's initial disclosures, was not produced prior to the filing of Defendants' exhibit list, nor had Plaintiff even seen this

32

document until it was provided to Plaintiff at 12:00pm on December 7, 2017 (the same day that this FPTCO is being filed).  Accordingly, the document is inadmissible. *See* FRCP 37(c)(1) (If a party "fails to provide information…as required by Rule 26(a)…the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008) (The rule "gives teeth to [the initial disclosure requirement] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed").

- The entire document is hearsay and/or double hearsay.  Fed. R. Evid. 801.
- Because Plaintiff has no idea where this document came from, who created it, and when it was created, Plaintiff objects on authentication grounds.  Fed. R. Evid. 901.
- Since Plaintiff was never provided this document until December 7, 2017, it has no idea what the relevance of the document is and therefore objects on relevance grounds. Fed. R. Evid. 401.
- Any relevance of this document (of which Plaintiff is currently unaware) would be outweighed by the danger of prejudicing Plaintiff with the use of a document that was not disclosed to Plaintiff for the entirety of this litigation.

o Exhibit 612:
  - This document was not produced as part of any party's initial disclosures, was not produced prior to the filing of

33

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

Defendants' exhibit list, nor had Plaintiff even seen this document until it was provided to Plaintiff at 12:00pm on December 7, 2017 (the same day that this FPTCO is being filed).  Accordingly, the document is inadmissible. *See* FRCP 37(c)(1) (If a party "fails to provide information…as required by Rule 26(a)…the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008) (The rule "gives teeth to [the initial disclosure requirement] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed").

- The entire document is hearsay and/or double hearsay.  Fed. R. Evid. 801.
- Because this document is undated, and it is unclear who even created it or where it was maintained, Plaintiff objects on authentication grounds.  Fed. R. Evid. 901.
- Any relevance of this document would be outweighed by the danger of prejudicing Plaintiff with the use of an unauthenticated document that was not produced to Plaintiff for the entirety of this litigation.

  o
  o Exhibit 613:
    - This document was not produced as part of any party's initial disclosures, was not produced prior to the filing of Defendants' exhibit list, nor had Plaintiff even seen this document until it was provided to Plaintiff at 12:00pm on

34

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**   K:\5875-2\PLE

December 7, 2017 (the same day that this FPTCO is being filed). Accordingly, the document is inadmissible. *See* FRCP 37(c)(1) (If a party "fails to provide information…as required by Rule 26(a)…the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008) (The rule "gives teeth to [the initial disclosure requirement] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed").

- ▪ The entire document is hearsay and/or double hearsay. Fed. R. Evid. 801.

- ▪ Because this document is undated, and it is unclear who even created it or where it was maintained, Plaintiff objects on authentication grounds. Fed. R. Evid. 901.

- ▪ Any relevance of this document would be outweighed by the danger of prejudicing Plaintiff with the use of an unauthenticated document that was not produced to Plaintiff for the entirety of this litigation.

11.    Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment.)

12. The following law and motion matters and motions in limine, and no others, are pending or contemplated: none

13.    Bifurcation of the following issues for trial is ordered. Plaintiff's cybersquatting and accounting claims and Defendants' declaratory relief counterclaims will be tried by the court after the jury trial.

35

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course or the trial of this cause, unless modified to prevent manifest injustice.

Dated:  December 18, 2017

_David O. Carter_

DAVID O. CARTER
U.S. DISTRICT JUDGE

36

1  Approved as to form and content.

2

3

4  Dated:  December 18, 2017        **LAVELY & SINGER**

5                                   By:   /s/ David B. Jonelis
6                                          David B. Jonelis

7                                   David B. Jonelis, State Bar No. 265235
8                                   Email: djonelis@lavelysinger.com
                                    2049 Century Park East, Suite 2400
9                                   Los Angeles, California 90067
                                    Telephone:  (310) 556-3501
10                                  Facsimile:   (310) 556-3615

11                                  Attorneys for Plaintiff and Counter-defendant
12                                  GRUMPY CAT LIMITED

13

14  Dated:  December 18, 2017        By:   /s/ Brian P. Kinder
                                           Brian P. Kinder
15
16                                  Brian P. Kinder, State Bar No. 212332
                                    Email: bkinder@tklglaw.com
17                                  19200 Von Karman Ave., Fourth Floor
                                    Irvine, CA 92612
18                                  Telephone:  (949) 216-3070
                                    Facsimile:   (949) 216-3074
19
20                                  Attorneys for Counter-claimants
                                    PAUL SANDFORD, NICK SANDFORD,
21                                  and GRUMPY BEVERAGE LLC

22

23

24

25

26

27

28

37

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**          K:\5875-2\PLE

## **Attestation Regarding Signatures**

I, David B. Jonelis, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  December 18, 2017                         By:  /s/ David B. Jonelis

David B. Jonelis

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**          K:\5875-2\PLE

**ATTACHMENT "1"**

**Plaintiff's position:**

Intervening Defendant Grumpy Beverage, LLC ("Grumpy Beverage") contends that it is not subject to any liability on the claims asserted in Plaintiff's operative Complaint because (1) it was not named as a Defendant in that Complaint (which was filed prior to Grumpy Beverage's intervention in this action), and (2) Plaintiff never amended its complaint to name Grumpy Beverage as a defendant.

Grumpy Beverage's position is absurd and contrary to the well-settled law that intervenors "enter the suit with the status of original parties and are fully bound by all future court orders." *United States v. State of Or.*, 657 F.2d 1009, 1014 (9th Cir. 1981). In fact, the very same argument raised by Grumpy Beverage has been *rejected* as a matter of course by federal courts.

Although there is extensive authority on the issue should the Court request further briefing, the following discussion from a recent California district court decision, is directly on point:

> "The City points out that Plaintiffs' complaint, filed August 18, 2014, names only the various Federal Defendants. Doc. 1. On January 20, 2015, the Court granted the City's motion to intervene in this matter as a defendant. Doc. 40. Plaintiffs never filed or sought leave to file an amended complaint naming the City in any claim, but point to compelling authority that suggests no such amendment is required. Intervenors "enter the suit with the status of original parties and are fully bound by all future court orders." *United States v. State of Or.*, 657 F.2d 1009, 1014 (9th Cir. 1981); *see also Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1017 (D.C. Cir. 1985) ("When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party."); *Alvarado v. J.C. Penney Co.*, 997 F.3d 803, 805 (10th Cir. 1993) ("We agree that when a party intervenes, it

39

becomes a full participant in the lawsuit and is treated just as if it were an original party.") (internal citation and quotation omitted). "This explains [Rule 24's] requirement that the proposed intervenor file its own 'pleading that sets out the claim or defense for which intervention is sought.'" *In re Holocaust Victim Assets Litig.*, No. 14-CV-00890 ERK JO, 2014 WL 2440612, at *8 (E.D.N.Y. May 30, 2014) (quoting Fed. R. Civ. P. 24(c)). Here, the City's Answer addresses the allegations contained in each of the three claims in the original Complaint and asserts numerous affirmative defenses against all of those claims. *See* Doc. 41. ***To now suggest that Plaintiffs should have been required to file an amended complaint to name the City is without merit. The purpose of Rule 8 pleading is to give notice. The City was on notice of the claims in this case, voluntarily intervened, and filed a responsive pleading as to those claims.***"

*Ctr. for Envtl. Sci. Accuracy & Reliability v. Nat'l Park Serv.*, 2016 WL 4524758, at *9 (E.D. Cal. Aug. 29, 2016) (emphasis added),

Similarly instructive is the following excerpt from *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985) (emphasis added):

"When a party intervenes, it becomes a ***full participant in the lawsuit and is treated just as if it were an original party***. *See District of Columbia v. Merit Systems Protection Board,* 762 F.2d 129, 132 (D.C.Cir.1985); *Marcaida v. Rascoe,* 569 F.2d 828, 831 (5th Cir.1978). The intervenor renders itself "vulnerable to complete adjudication by the federal court of the issues in litigation between the intervenor and the adverse party." *United States v. Oregon,* 657 F.2d 1009, 1014 (8th Cir.1981) (quoting 3B *Moore's Federal Practice* ¶ 24.16[6] (2d ed. 1981)). It is said to assume the risk that its position will not prevail and that an order adverse to its interests will be entered. *See* 7A C. Wright

40

& A. Miller, *Federal Practice & Procedure* § 1920, at 611 (1972). As we said recently, "***the possibility that the plaintiff will be able to obtain relief against the intervenor-defendant" is part of the "price" paid for intervention***. *District of Columbia,* at 132.

Moreover, even looking past the well-settled law on the issue of intervening defendants, the whole premise of Grumpy Beverage's requested intervention was so that it could defend against the allegations in Plaintiff's complaint. *See* Dkt. 31-1 at 12:11-13 ("Grumpy Beverage's interests render it the party to proffer evidence in opposition to the allegations of Grumpy Cat."); 13:4-5 ("Grumpy Beverage wants to defeat Grumpy Cat's claims and retain ownership of copyright, trademark and domain name properties"). Indeed, Grumpy Beverage actually filed an answer to the Plaintiff's Complaint, in which it admitted and/or denied all of the allegations. Dkt. 38. It can hardly claim at this juncture, nearly two years later, that it is not subject ot liability because Plaintiff did not amend the Complaint.

Accordingly, there is no legal or factual basis for Grumpy Beverage to claim that it is not subject to Plaintiff's claims in this action. To the extent that Plaintiff alleged a claim against Grenade Beverage in its Complaint, Grumpy Beverage assumed the risk of defending against that claim when it intervened.

**Defendants' Position:**

Defendants assert that GRUMPY BEVERAGE, LLC is an Intervening Defendant, Counterclaimant and Counterclaim-in-Reply Defendant. In that regard, Defendants assert that Plaintiff knowingly and intentionally omitted the entity as a party in the complaint as well as knowingly and intentionally omitted to allege any facts or claims against the entity in the complaint. Defendants further assert that Plaintiff's only factual allegations and claims against GRUMPY BEVERAGE, LLC are those stated in the Counterclaim-in-Reply. In the event that Plaintiff seeks leave to amend the pleadings to conform to evidence at trial to add GRUMPY BEVERAGE,

41

1    LLC as a party to the complaint, GRUMPY BEVERAGE, LLC hereby preserves the

2    right to oppose such a motion.

42

## ATTACHMENT "2"

**<u>Plaintiff's Position:</u>**

The fact that Grumpy Beverage was not actually served with Plaintiff's Complaint is irrelevant at this juncture.  Well-settled federal law demonstrates that Grumpy Beverage ***waived service*** when it filed its answer to Plaintiff's Complaint.  *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction."); *see also DePrins v. Clark*, 566 Fed.Appx. 608, 610 (9th Cir. 2014) ("a party waives service of process when it files an answer to the complaint").

**<u>Defendants' Position:</u>**

Defendant has not had time to prepare a response to this statement as Plaintiff has raised this issue for the first time during the drafting of this Pre-Trial Conference Memo.  Defendants will be prepared to address this issue at the Pre-Trial Conference.

**PARTIES' FINAL PRETRIAL CONFERENCE ORDER (L.R. 16-7)**          K:\5875-2\PLE