**DAVID B. JONELIS (BAR NO. 265235)**
djonelis@lavelysinger.com
**JAKE A. CAMARA (BAR NO. 305780)**
jcamara@lavelysinger.com
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile:  (310) 556-3615

Attorneys for Plaintiff and Counterdefendant
GRUMPY CAT LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| GRUMPY CAT LIMITED, an Ohio Limited Liability Entity,<br><br>            Plaintiff,<br><br>     vs.<br><br>GRENADE BEVERAGE LLC, a California Limited Liability Company; PAUL SANDFORD, an individual; NICK SANDFORD, an individual; and DOES 1-50,<br><br>            Defendants. | Case No:  8:15-cv-02063-DOC-DFM<br><br>**PLAINTIFF GRUMPY CAT LIMITED'S REPLY ISO MOTION FOR ATTORNEY'S FEES**<br><br>**[Declaration of David B. Jonelis filed concurrently herewith]**<br><br>Date:         July 23, 2018<br>Time:         8:30 A.M.<br>Crtroom:    9D<br><br>Case filed:   December 11, 2015<br>FPTC:         December 18, 2017<br>                    8:30 a.m.<br>Trial date:   January 16, 2018<br>Judge:        Hon. David O. Carter |
| PAUL SANDFORD, an individual; NICK SANDFORD, an individual; and GRUMPY BEVERAGE, LLC, a Texas Limited Liability Company,<br><br>            Counterclaimants,<br><br>     vs.<br><br>GRUMPY CAT LIMITED, an Ohio Limited Liability Entity; and ROES 1-5,<br><br>            Counterdefendants. | |

**REPLY ISO MOTION FOR ATTORNEY'S FEES**

Having reviewed Defendants' Opposition, Plaintiff hereby submits its Reply in support of its Motion for Attorney's Fees (the "Motion"). [1,2]

# I. INTRODUCTION.

Contrary to Defendants' absurdly vitriolic Opposition, the only "absolute mess" here is their own bad faith and deceptive conduct, along with the nonsensical legal and factual positions that they and their counsel have forced Plaintiff and the Court to address throughout this entire case. Unsurprisingly, such bad faith conduct has continued in their recent Opposition, in which they have not only relied upon baseless positions that were previously rejected by this Court and/or the Jury, but have made at least two *provably false* statements to this Court.

First, unbelievably, Defendants **falsely** assert that Plaintiff failed to meet and confer pursuant to Local Rule 7-3 before filing the instant Motion. This is a *flat out lie* (and is notably unsupported by any declaration from Defendants' counsel). As Defendants' counsel Brian Kinder is well-aware, Plaintiff's counsel met and conferred regarding the instant Motion *on three separate occasions*. *See* concurrently filed Declaration of David B. Jonelis ("Jonelis Decl."), ¶4 and Notice of Errata. Indeed, Defendants' meet and confer argument is particularly ironic given that Mr. Kinder himself has a well-documented history of failing to meet and confer with Plaintiff's counsel before filing prior motions in this case (and was even *admonished* by the Court for such failure [Dkt. 37 at p. 4]).

Second, in what is likely an attempt to justify the weakness in their argument, Defendants' falsely claim that they had only seven days to respond to the instant

---

[1] Unless otherwise indicated, capitalized terms used herein have the same definitions as in Plaintiff's Motion.

[2] Defendants filed no opposition to Plaintiff's concurrently filed Motion for Discretionary Costs (in which Plaintiff seeks to recover its trial graphics costs). Consequently, Defendants have effectively conceded Plaintiff's entitlement to these costs.

1
**REPLY ISO MOTION FOR ATTORNEY'S FEES**

Motion. This is also a ***flat out lie***. Defendants had ten days to respond, yet chose to file their Opposition ***three days early***.

Despite Defendants' frantic and unpersuasive attempt to convince this Court that, notwithstanding Plaintiff having effectively obtained a ***complete victory*** in this case, Plaintiff is somehow entitled to ***nothing*** in fees, such a position is unreasonable, unsupported, and unjust. The attorneys' fees sought here are entirely reasonable, recoupable as a matter of law, and, quite frankly, well-deserved given the outcome of this case in Plaintiff's favor. Accordingly, Plaintiff respectfully requests this Court to grant the instant Motion in its entirety.

**II.** **DEFENDANTS HAVE FAILED TO DEMONSTRATE ANY BASIS FOR DENYING PLAINTIFF'S MOTION, AND THEREFORE PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES IN THE REASONABLE AMOUNT OF $321,895.**

In their Opposition, Defendants find themselves grasping at straws to prevent Plaintiff from recovering its reasonable attorneys' fees. As shown below, each and every one of the purported "issues plaguing Plaintiff's Motion" (Opposition at 1:12) are either premised on bold-faced lies, misstatements of fact and law, or both.

**A.** **Defendants and Their Counsel Have Knowingly Misrepresented Facts Concerning The Meet and Confer Process And Their Deadline To File The Opposition.**

From the outset, unsurprisingly, Defendants take a ***provably false*** position concerning the parties' meet and confer process. Defendants' assertion that no meet and confer conversation ever took place is as absurd as it is appalling. Admittedly, Plaintiff inadvertently failed to include in its Notice of Motion the requisite two line statement, pursuant to Local Rule 7-3, that "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)." *See* concurrently filed Notice of Errata. However, it is indisputable that counsel for the

parties did in fact meet and confer regarding the instant motion *no less than three times*. *See* Jonelis Decl., ¶4.

Counsel for Plaintiff spoke with Defendants' counsel by telephone on three separate occasions – on June 7, June 8, and June 15, 2018. Jonelis Decl., ¶4 and Notice of Errata. All three of these conversations took place at least seven days prior to when the instant Motion was filed.

During the June 7 and June 8 phone conversations with Defendants' counsel, Plaintiff's counsel repeatedly informed Defendants' counsel that Plaintiff would be timely seeking its fees and costs because it had prevailed on its contract and infringement claims (and its defenses to all of Defendants' counterclaims). Jonelis Decl., ¶ 5. Further, Plaintiff's counsel (1) disclosed the amount of fees and costs that Plaintiff would be seeking and (2) advised Defendants' counsel of Plaintiff's position as to why Defendants' conduct in the litigation was unreasonable and in bad faith, warranting fees under the Copyright Act and Lanham Act. Jonelis Decl., ¶ 5.

During the June 8 conversation, Defendants' counsel informed Plaintiff that Defendants would prefer not to litigate the issue of attorneys' fees and costs, and that he would be calling Plaintiff's counsel to discuss a potential settlement that could avoid the filing of the instant Motion. Jonelis Decl., ¶ 6.

During the June 15 conversation, Defendants' counsel reiterated that Defendants would prefer not to litigate the issue of fees and costs. However, because Defendants' counsel was not able to propose any reasonable settlement or resolution, Plaintiff's counsel informed Defendants' counsel that Plaintiff would be proceeding with its Motion. Jonelis Decl., ¶7.

Thus, Defendants' contention that there was no meet and confer is an outright lie.

Defendants also *falsely* contend in the Opposition that that they had "only 7 days to oppose [the] motion." To the contrary, because the hearing on the Motion is not until July 23, 2018, Defendants had until Monday, July 2 (*i.e.*, 21 days before

3
**REPLY ISO MOTION FOR ATTORNEY'S FEES**

July 23) to timely file their Opposition pursuant to Local Rule 7-9.  This was **ten days** after the June 22 filing date of the Motion.[3]  Defendants nevertheless chose to file their Opposition *three days early*.  The fact that Defendants have now raised their own apparent error in calculating the filing deadline as a basis to deny the Motion is outrageous, and further demonstrates the absurdity and bad faith of the their entire position.

It is unfortunate that Plaintiff has now had to incur further fees refuting two provably false arguments by Defendants.  Indeed, Defendants' meet and confer argument is particularly outrageous given the well-documented fact that Defendants' counsel Brian Kinder previously failed on two prior occasions to comply with Local Rule 7-3 in this case (including in connection with Defendants' Motion in Limine to exclude two of Plaintiff's key witnesses from trial), and was even *admonished* by the Court for such failure.  [*See, e.g.,* Dkt. 37 at p. 4, Dkt. 100 at pp. 2-8].

Simply put, Plaintiff fully complied with its meet and confer obligation, and Defendants' position here is yet another example of unreasonable and bad faith conduct.  Such conduct should not be condoned.

### B. Defendants Have Once Again Rehashed Their Frivolous Argument That Grumpy Beverage Is Not a Party to This Action.

As the Court is well aware, Defendants' argument that Grumpy Beverage is somehow not a party to this action (simply because it intervened after the filing of Plaintiff's Complaint) *has been rejected by this Court on two separate occasions*.  [*See* Dkt. 148 at fn. 2].  And yet Defendants have nevertheless rehashed this baseless argument as a purported ground for denying the Motion, wasting everyone's time in the process (and forcing Plaintiff to incur further recoverable fees).

---

[3] Defendants have also had notice of the Motion since at least the initial June 7 meet and confer discussion amongst the parties.

As this Court has already made clear, there is absolutely no law supporting Defendants' position. Defendants again cite to no law in support of their position, but still dedicate over a page of argument in their Opposition (void of any legal support whatsoever) in an effort to undermine this Court's prior rejections of this premise. For the ***third*** time, Grumpy Beverage's position is absurd and contrary to the well-settled law that intervenors "enter the suit with the status of original parties and are fully bound by all future court orders." *United States v. State of Or.*, 657 F.2d 1009, 1014 (9th Cir. 1981).

### C. **Plaintiff Is Entitled To Fees Under Both The Copyright Act and Lanham Act.**

It is telling that Defendants have failed to refute (much less even address) the fundamental example of their bad faith discussed in the Motion, which in and of itself demonstrates why an award of fees is warranted under the Copyright and Lanham Acts. More specifically, Defendants do not dispute, nor have they ever (at trial or otherwise) presented ***any evidence*** contradicting the fact that they and their counsel, Brian Kinder, ***knew*** before this action was even filed that the subject license agreement did not encompass anything beyond iced coffee. [Motion at pp.4-5]. Indeed, evidence of Defendants' knowledge in this regard was unequivocally presented at trial, both through Kia Kamran's testimony and in Trial Exhibit 64 (in which Mr. Kinder made his after-the-fact proposal to remove the critical three words "a line of" from Section 1(b) of the subject agreement in order to expand its scope ***beyond iced coffee***).

Nevertheless, Defendants still forced Plaintiff to spend ***hundreds of thousands*** of dollars litigating the issue of iced vs. ground coffee. Defendants' silence on this issue is telling, and effectively concedes the issue of their bad faith.

The unreasonableness of Defendants' position and the resulting outcome of the case justify an award of attorneys' fees under the Copyright Act. As the evidence has shown, there has been nothing "reasonable" about Defendants' position in this case.

Their entire position (like their assertions in the instant Opposition) has always been premised on numerous fallacies. It is uncontroverted that Defendants and their counsel were well-aware that they did not have the right to produce ground coffee under the License Agreement. The documentary evidence presented at trial as well as the testimony of Kia Kamran demonstrated that Defendants' indisputably knew this fact and even admitted it, yet they insisted on suing Plaintiff for over $12 Million under a knowingly false legal theory.[4]

Further, this case is, by definition, an "exceptional case" under the Lanham Act. Defendants' statement that the case "clearly could have gone either way" is laughable. Opp. p. 5 [Dkt. 158]. The jury would not have awarded over $710,000 in damages - necessarily including a finding of *willful* trademark infringement - had the case been a "close call." Rather, the jury not only found that Defendants infringed Plaintiff's trademarks, but necessarily found that Defendants *knew* that their acts were outside the scope of the License Agreement and ***did it anyway***. This willful infringement is, by definition, an example of an "exceptional case" under the Lanham Act. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003) (Within the meaning of Section 35, "exceptional" refers to cases where the defendant has acted "maliciously, fraudulently, deliberately and/or *willfully*") (emphasis added). Indeed, this Court has previously found that a jury's finding of willful infringement is "instructive" on the issue of awarding attorneys' fees under the Lanham Act. *See QS Wholesale, Inc. v. World Marketing, Inc.*, 2014 WL 12586120, at *14 (C.D. Cal. Jan. 7, 2014).

---

[4] Notably, Defendants assert that their position throughout this case was reasonable because this Court previously found that the contract term was ambiguous on summary judgment. This is completely meaningless. The court ruled on summary judgment (in ***Plaintiff's*** favor) ***before*** any evidence of Defendants' knowledge and admissions were presented at trial.

Separate and apart from the fundamental fallacy at the core of Defendants' position (*i.e.* that there was a reasonable dispute over iced vs. ground coffee when in fact Defendants were admittedly aware that the agreement only covered iced coffee), Defendants also forced Plaintiff and this Court to entertain a plethora of other disingenuous and/or ridiculous contentions throughout the tenure of this case, including without limitation the following:

- Defendants have repeatedly contended (including in their Opposition) that Grumpy Beverage is not subject to liability simply because it intervened after Plaintiff's complaint was filed, despite the fact that this contention runs counter to well settled law and Defendants have cited no authority for their position.
- Defendants *fabricated* a nonexistent fiduciary relationship between the parties (a notion that the Jury rejected outright) by characterizing a standard license agreement as a "joint venture" between the parties.
- Defendants absurdly contended at trial that Plaintiff somehow committed fraud by appearing on Fox News to promote the subject iced coffee product *at Defendants' own request*.
- Defendants asserted, for the first time at trial, that Plaintiff somehow "blew the launch" of the subject iced coffee product and caused $12 million in damages simply by posting on Plaintiff's social media a picture of the subject iced coffee product that had been sent to Plaintiff *by Defendants themselves* (and that Defendants had already posted on their own social media).
- Defendants falsely testified at trial that they had never previously seen a Deadline.com article that refuted their entire theory of fraud concerning a "Grumpy Cat" movie featuring Will Ferrell and Jack Black. However, they were then forced to admit the truth when

confronted with their own, previously unproduced, text messages showing that they did in fact read the article when it came out.

- Defendants presented an "expert witness" who was nothing more than a mouthpiece for Paul Sandford, and who relied completely on Mr. Sandford's own inflated and self-serving sales projections in reaching a damages calculation of $***12 Million***.

***Enough is enough***.

### D. Apportionment Would Be Meaningless And Ineffective Here.

As an initial matter, Defendants' assertion that a "prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorney's fees only for time spent litigating the Lanham Act claims" (Opposition at 7:21-23) ***completely*** misses the mark. Such an assertion would be true if Plaintiff had no basis for seeking attorneys' fees for its other claims at trial. However, Plaintiff brought three claims against Defendants at trial, and prevailed on all three. Each claim had its ***own statutory and/or contractual basis*** for awarding attorney's fees. Apportionment of non-Lanham Act claims would be a useless exercise. Indeed, to the extent that any fees were incurred in connection with Plaintiff's ultimately unsuccessful cybersquatting claim, such fees (by Defendants' own admission) were negligible at best and were also incurred alongside fees spent on non-cybersquatting matters.[5]

To be clear, the contract and infringement claims asserted in this case were so inextricably intertwined that apportionment would be meaningless. *See SAS v.*

---

[5] While Defendants attempt to cherry pick certain time entries that reference "cybersquatting," even a cursory review of those same time entries demonstrate that the time was also spent on non-cybersquatting issues. For example, notwithstanding Defendants' deceptive claim that 2.0 hours were spent on November 8, 2016 in connection with drafting a cybersquatting claim, the actual time entry reflects time also spent on Plaintiff's successful motion to dismiss Defendants' first amended counterclaim. [*See* Dkt. 57, Dkt. 63].

8
**REPLY ISO MOTION FOR ATTORNEY'S FEES**

*Sawabeh Information Services Co.*, 2015 WL 12763541, *15 (C.D. Cal.) (holding that apportionment of fees between Lanham Act and state law claims was "not necessary, as the claims are so inextricably intertwined that an estimated adjustment would be meaningless"). In particular, this entire case effectively boiled down to *one* fundamental question – **Did Defendants exceed the scope of the License Agreement?** This question was not only at the core of the parties' respective breach of contract claims, but it was also the lynchpin to resolving the issue of infringement. *See*, *e.g.*, *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F.Supp. 2d 1096, 1107 (C.D. Cal. 2007) ("Use of a work in excess of a license gives rise to liability for copyright infringement"); Dkt. 128 at Instruction 33 (instructing the jury to find trademark infringement if Defendants used Plaintiff's marks "in a way that fell *outside the scope of the license agreement*"). The Jury eventually answered the question with a resounding "Yes," finding that Defendants not only breached the subject agreement but also committed copyright and trademark infringement by exceeding the scope of the agreement. Thus, any apportionment of the fees here would be arbitrary and nonsensical, as each of the subject claims required a determination of the same fundamental core issue.

Furthermore, in making their misguided apportionment argument, Defendants have completely mischaracterized the number, nature, and outcome of the various claims asserted in this action. As shown by the chart below, of the nine non-abandoned causes of action that Defendants brought against Plaintiff in this case, Defendants *lost all nine claims*. In other words, Defendants' rate of success on their own claims was **zero percent**. In stark contrast, Plaintiff prevailed on **one hundred percent** of its own causes of action at the jury trial, and merely failed to prevail on a single post-jury claim of cybersquatting that was tangential to the fundamental issues here and which (by Defendants' own admission) necessitated only a few hours of fees.

|   | Party | Claim | Outcome |
|---|---|---|---|
| 1 | Defendants | Declaratory Judgment Of Trademark Non-Infringement [Dkt. 39] | Plaintiff Prevailed [Dkt 148] |
| 2 | Defendants | Declaratory Judgment Of Copyright Non-Infringement [Dkt. 39] | Plaintiff Prevailed [Dkt 148] |
| 3 | Defendants | Reverse Domain Name Hijacking [Dkt. 39] | Plaintiff Prevailed [Dkt. 51] |
| 4 | Defendants | Intentional Misrepresentation [Dkt. 39] | Plaintiff Prevailed [Dkt. 131] |
| 5 | Defendants | Negligent Misrepresentation [Dkt. 39] | Plaintiff Prevailed [Dkt. 131] |
| 6 | Defendants | Breach of Fiduciary Duty [Dkt. 39] | Plaintiff Prevailed [Dkt. 131] |
| 7 | Defendants | Breach of Contract [Dkt. 39] | Plaintiff Prevailed [Dkt. 131] |
| 8 | Defendants | Breach of the Implied Covenant of Good Faith and Fair Dealing [Dkt. 39] | Plaintiff Prevailed [Dkt. 131] |
| 9 | Defendants | Declaratory Judgment Of Trademark Ownership [Dkt. 39] | Abandoned by Defendants |
| 10 | Defendants | Declaratory Judgment Of Copyright Ownership [Dkt. 39] | Abandoned by Defendants |
| 11 | Defendants | Declaratory Judgment Of Domain Name Ownership [Dkt. 39] | Abandoned by Defendants |
| 12 | Defendants | Intentional Interference With Contractual Relations | Abandoned by Defendants |

**REPLY ISO MOTION FOR ATTORNEY'S FEES**

|    | Party      | Claim                                                        | Outcome                         |
|----|------------|--------------------------------------------------------------|---------------------------------|
|    |            | [Dkt. 39]                                                    |                                 |
| 13 | Defendants | Intentional Interference With Prospective Economic Advantage [Dkt. 39] | Abandoned by Defendants |
| 14 | Plaintiff  | Copyright Infringement [Dkt. 1]                              | Plaintiff Prevailed [Dkt. 131]  |
| 15 | Plaintiff  | Trademark Infringement [Dkt. 1]                              | Plaintiff Prevailed [Dkt. 131]  |
| 16 | Plaintiff  | Breach of Contract [Dkt. 1]                                  | Plaintiff Prevailed [Dkt. 131]  |
| 17 | Plaintiff  | Trademark Dilution [Dkt. 1]                                  | Abandoned by Plaintiff          |
| 18 | Plaintiff  | Accounting [Dkt.1]                                           | Abandoned by Plaintiff          |
| 19 | Plaintiff  | Cybersquatting [Dkt. 1]                                      | Defendants Prevailed [Dkt. 51]  |

E. **<u>Plaintiff's Fees and Rates are Entirely Reasonable.</u>**

Defendants have completely failed to demonstrate how the fees requested here are excessive in any way.[6] The requested fees are remarkably low and represent significantly discounted rates. Indeed, these rates are well within the range that this

---

[6] Once again, Defendants use smoke and mirrors, claiming that Plaintiff's fees are excessive because Plaintiff utilized "eight time keepers" over the course of a two-year case. This characterization is completely disingenuous. Of the approximately 883 hours expended on this case, 854 of those hours came from just two primary attorneys – David B. Jonelis and Jake A. Camara. An additional 15 hours were expended by the firm's former associate who was staffed on the case prior to Mr. Camara's involvement, Lindsay Molnar.

**REPLY ISO MOTION FOR ATTORNEY'S FEES**

Court has previously found to be reasonable. *See, e.g., QS Wholesale, supra*, 2014 WL 12586120, at *15.

This case consisted of over two years of litigation, and required Plaintiff to not only prove up its own claims, but also to defend against malicious counterclaims seeking over ***$12 million***. Indeed, Defendants' counterclaims threatened the very existence of Grumpy Cat Limited.

Plaintiff's attorney's fees of just $321,895 for two years of litigation and a 5-day jury trial are miniscule in comparison to fees previously awarded by this Court and the Ninth Circuit. *See, e.g., QS Wholesale, supra*, 2014 WL 12586120, at *17 (this Court previously awarded $1,826,035.40 in prevailing party attorney's fees after a jury found willful infringement under the Lanham Act); *Wall Data Inc. v. Los Angeles County Sheriff's Department*, 447 F.3d 769, 787 (9th Cir. 2006) (affirming $516,271 in prevailing party attorney's fees under the Copyright Act following a four day jury trial resulting in only $210,000 in total damages); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 674-676 (9th Cir. 2017) (awarding $5,213,117 in prevailing party attorneys' fees under Copyright Act).

Thus, there should be no legitimate dispute as to the reasonableness of Plaintiff's attorneys' fees.

### F. **Plaintiff Produced Comprehensive Time Records.**

Not only did Plaintiff's Motion summarize the entirety of the work performed in this case (Motion at pp.8-9), but Plaintiff provided copies of the actual invoices themselves. While an attorney's testimony summarizing the work performed may in and of itself be sufficient, Plaintiff went above and beyond and attached the detailed time records as *prima facie* evidence of the work performed. *See Martino v. Denevi*, 182 Cal.App.3d 553, 559 (1986) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney's fees, even in the absence of detailed time records").

Although Defendants attempt to fault Plaintiff for redacting its time records, those redactions were necessary to protect attorney-client privileged and/or work product information, as *required* by the California Rules of Professional Conduct. Surely, Defendants are not contending that privileged and work product information should have been disclosed to the Court? Nevertheless, at the request of this Court, Plaintiff is willing to provide un-redacted versions of the invoices for *in camera* review.

## III. CONCLUSION

For over two years, Defendants have presented this Court with a dishonest, knowingly false legal position concerning the core issue of iced vs. ground coffee. The dishonesty was finally exposed at trial, resulting in the Jury reaching a verdict completely in Plaintiff's favor (and the Court rejecting Defendants' subsequent attempt to reverse the jury's verdict by seeking a declaration of non-infringement). Now, Defendants and their counsel have again presented further dishonesty to this Court. While Defendants may find themselves in an understandably desperate position, that does not excuse their bad faith conduct. Despite Defendants' tactics, the facts are clear: Defendants' position throughout this litigation was knowingly false and objectively unreasonable. As the evidence showed, Defendants and their counsel *knew* their position was false and *knew* it was unreasonable. Plaintiff has endured over two years of litigation and incurred over $300,000 in fees. Plaintiff respectfully requests that it be allowed to recover the full amount of fees that it seeks in the instant Motion.

Respectfully submitted,

Dated: July 9, 2018

LAVELY & SINGER, P.C.
David B. Jonelis
Jake A. Camara
By: /s/ Jake A. Camara
    JAKE A. CAMARA
Attorneys for Plaintiff and Counter-Defendant
GRUMPY CAT LIMITED

13

**REPLY ISO MOTION FOR ATTORNEY'S FEES**